John **BRYANT**, et al., Plaintiffs,

v.

**APPLE SOUTH, INC.,** et al., **Defendants.**

**No. 3:97–CV–83 (DF).**

United States District Court,
M.D. Georgia,
Macon Division.

July 29, 1998.

---

4. *See* U.S.S.G. § 4A1.2(e)

5. The defendant's original reversed sentence was 387 months.

Martin D. Chitwood, Atlanta, GA, William S. Lerach, Darren J. Robbins, Alan Schulman, San Diego, CA, Steven E. Cauley, Little Rock, AR, for John Bryant.

Theodore J. Sawicki, Oscar N. Persons, John A. Jordak, Jr., Alston & Bird, Atlanta, GA, Edward Davison Burch, Athens, GA, for Avado Brands, Inc.

Martin D. Chitwood, Atlanta, GA, Jules Brody, New York City, Alfred G. Yates, Jr., Pittsburgh, PA, Steven E. Cauley, Little Rock, AR, for Robert C. East, Thomas R. Rutherford, S.S. Rutherford, Artel Foam Corp. Pension Trust,Stanley Cohen and Joseph Nadboy.

### ORDER

FITZPATRICK, Chief Judge.

Before the Court is a motion to dismiss the above-styled action. Defendants contend that they are entitled to dismissal because the Complaint runs afoul of Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, federal securities laws, and the applicable statute of limitations. After a hearing on the motion and a review of the record, which includes an eighty five page Amended Complaint, and over ten briefs on the motion, the Court enters the following Order.

### I. Summary of Facts[1]

In considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences from these facts in favor of the Plaintiffs. Read in this light, the facts are as follows.

Apple South is a Corporation that operates restaurants throughout the United States. Its stock is publicly traded on ANASDAQ as "APSO." During the class period, defined by the Complaint to be May 26, 1995 through September 24, 1996, Apple South engaged in an aggressive growth strategy that involved the acquisition of additional restaurants. A high stock price facilitated Apple South's ability to raise capital for these acquisitions. Plaintiffs allege that Apple South's top officers and directors inflated the price of Apple South stock between May 26, 1995 and September 24, 1996 (the "class period") by making false and misleading statements about the success of its acquisition of restaurants

from the Marcus Corporation and DF & R Restaurants, Inc., its overall expansion strategy, and its business prospects. During the class period, Apple South sold over 10 million shares of Apple South stock and $125 million in debt securities to the investing public, and defendants David Frazier, Marc Redus, and John McLeod, Jr. sold over $19.6 million of their Apple South stock.

On May 26, 1995, the beginning of the class period, Apple South stock was publicly traded for $15.25 per share. By May of 1996, the price had risen to $28.25 per share, an all-time high. At the conclusion of the class period, September 24, 1996, Defendants publicly announced the following: (1) Apple South's acquisition of 18 Applebee's restaurants and the related franchise territories from the Marcus Corporation had hurt Apple South's business; (2) the 1996 EPS would not meet earlier forecasts of 30%–35% growth, and would probably not exceed 1995 EPS; and (3) Apple South was curtailing its 1996 and 1997 expansion plans. After the announcement, Apple South stock plummeted 40% to $12¼.

### II. Plaintiff's Motion to Strike

Prior to considering the motion to dismiss, the Court must address Plaintiffs' motion to strike. Defendants attached 19 documents to their "Memorandum of Law in Support of Motion to Dismiss Amended Complaint." These documents, filed as exhibits, are referenced throughout the memorandum. Plaintiff seeks to strike nine of these documents, Exhibits K through S, as outside the pleadings in this case. A description of the disputed documents follows:

### Disputed Documents in Plaintiff's Motion to Strike

| Exhibit | Description |
| --- | --- |
| K | Statements Of Changes In Beneficial Ownership, Form 4s, dated September 1, 1995, and March 7, 1996 |

---

**1.** Because the analysis below is fact-specific, additional facts will be presented in the discussion sections which follow.

L    Apple South's Quarterly Report on Form 10–Q for the quarter ending June 30, 1996

M    Apple South's Quarterly Report on Form 10–Q for the quarter ending March 31, 1996

N    Apple South's Quarterly Report on Form 10–Q for the quarter ending July 2, 1995

O    Apple South's Quarterly Report on Form 10–Q for the quarter ending October 1, 1995

P    Letter to Apple South's Shareholders dated October 19, 1995, and Notice of Special Meeting of Shareholders to be held November 17, 1995

Q    Apple South's Annual Report on Form 10–K for the year ending December 31, 1995

R    Apple South's Prospectus Supplement dated May 23, 1996

S    January 16, 1996, Atlanta Journal and Constitution news article regarding Apple South (reprinted from WESTLAW)

In support of their argument that Exhibits K–S should be stricken from the record at this phase of the litigation, Plaintiffs rely on Eleventh Circuit authority which holds that a district court may not consider matters outside the pleadings on a motion to dismiss based on Rule 12(b)(6) without converting it to a motion for summary judgment. *See Property Management & Inv., Inc. v. Lewis,* 752 F.2d 599, 604 (11th Cir.1985).[2]

■ The Defendants argue that three exceptions to the general rule cited above allow the court to consider Exhibits K–S. First, Defendants argue that Plaintiffs' Amended Complaint specifically refers to Exhibit S, when it states:

On 1/16/96, the Atlanta Constitution published an interview of defendants DuPree and Booth in which Booth adopted analysts' estimates of 1996 EPS of $0.95. De-

fendants also stated that its Applebee's same store growth would increase slightly in the next year.

Amended Complaint ¶ 69. Because the article is quoted in the complaint, fairness requires that the entire document be considered here. *See Pension Benefit Guar. Corp. v. White Consol. Ind.,* 998 F.2d 1192 (3rd Cir.1993) ( [A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.). Therefore, the motion to strike is **DENIED as to Exhibit S.**

■ In contrast with Exhibit S, Exhibits K, L, M, N, O, Q, and R are not quoted or mentioned in Plaintiffs' Complaint. Defendants argue that they are relevant, however, and rely on the following holding of the Second Circuit:

When a district court decides a motion to dismiss a complaint alleging securities fraud, it may review and consider public disclosure documents required by law to be and which actually have been filed with the SEC, particularly where plaintiff has been put on notice by defendant's proffer of these public documents.

*Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42,47 (2d Cir.1991). The rule quoted above has not been adopted by the Eleventh Circuit, and the Eleventh Circuit's opinions on the subject do not leave room for a district court to create an exception to the general rule. The law of the Eleventh Circuit is that consideration of matters outside the pleadings on a Rule 12(b)(6) motion requires conversion to summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Ware v. Associated Milk Producers, Inc.,* 614 F.2d 413, 415 (5th Cir. 1980).[3] Because the documents were not quoted or specifically mentioned in the Amended Complaint, the Court will not deviate from the general rule of the Eleventh Circuit by adopting the Second Circuit's rule from *Cortec Industries.* Therefore Plaintiffs'

---

**2.** All parties agree that summary judgment would not be appropriate at this stage of the action.

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en bank) the 11th Cir. adopted as binding precedent all decisions handed down by the former Fifth Circuit prior to October 1, 1981.

motion to strike is **GRANTED with respect to exhibits K, L, M, N, O, Q, and R.**

■ Finally, Defendants argue that the Court should rely on *Cortec Industries* to allow consideration of Exhibit P. The non-SEC documents that were allowed to be considered in ruling upon the motion to dismiss in *Cortec Industries* were a stock purchase agreement, an offering memorandum, and a warrant. The Second Circuit held that these documents were either in the plaintiff's possession or the plaintiff had knowledge of them, and they were relied upon in bringing suit. *Id.* at 48. In holding that the documents could be considered in ruling on the motion to dismiss, the court found that the plaintiff had notice of the documents and they were integral to the complaint. *Id.* In the case sub judice, Defendants have not shown that Exhibit P was integral to the Complaint; therefore, it will not be considered.

## III. Legal Standard for Motion to Dismiss

Rule 8 of the Federal Rules of Civil Procedure set out the general rules of pleading. Specifically, Rule 8(a)(2) requires that a complaint contain, "a short and plain statement of the claim showing that the pleader is entitled to relief." Ordinarily, a plaintiff is not required to set out in great detail the facts upon which a claim is based. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). However, the standards for pleading a claim for securities fraud are much more stringent. These standards are outlined in the next section of the Order. One important rule that continues to apply in this type of case is the Supreme Court's mandate that Plaintiffs must be given the benefit of any doubt.

> When a federal Court reviews the sufficiency of a complaint ... [t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.... [I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of

the complaint should be construed favorably to the pleader.

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

## IV. Discussion

Defendants raise three grounds for dismissal of this lawsuit: 1) the Amended Complaint fails to plead fraud as required by the Private Securities Litigation Reform Act and Rule 9(b) of the Federal Rules of Civil Procedure; 2) the statements alleged to have been made by the Defendants are not actionable as a matter of law; 3) and certain of Plaintiffs' claims are barred by the applicable statute of limitations.

### A. Pleading requirements

■ Plaintiffs' claims are based on Section 10(b), which makes it unlawful for any person "to use or employ, in connection with the purchase or sale of ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). One such rule is 10b-5 which prohibits the making of any untrue statement of material fact or the omission of a material fact that would render statements made misleading in connection with the purchase or sale of any security. 17 C.F.R. § 240.10(b)-5. To state a valid Rule 10(b)-5 claim, "a plaintiff must allege that the defendant: (a) made a misstatement or omission, (b) of material fact, (c) with scienter, (d) in connection with the purchase or sale of securities, (e) upon which the plaintiff relied, and (f) that reliance proximately caused the plaintiff's injury." *Gross v. Medaphis Corp.*, 977 F.Supp. 1463, 1470 (N.D.Ga.1997).

The federal statute regarding private securities litigation provides the following requirements for securities fraud actions:

> In any private action arising under this chapter in which the plaintiff alleges that the defendant—
>
> (A) made an untrue statement of a material fact; or
>
> (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances

in which they were made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u–4(b)(1).

*(1) Particularity and Materiality*

■ Plaintiffs allege that Defendants Dupree and Booth violated Rule 10b–5 by making material misstatements. Plaintiffs allege that the other Defendants violated Rule 10b–5 by engaging in insider trading without disclosing the non-public information that was known to them regarding Apple South's financial status.[4] *See United States v. O'Hagan*, 521 U.S. 642, 117 S.Ct. 2199, 2206–07, 138 L.Ed.2d 724 (1997) (insider trading violates Rule 10b–5); *Voit v. Wonderware Corp.*, 977 F.Supp. 363, 368–69 (E.D.Pa.1997) (trading on non-public information creates a duty to disclose).

The false statements alleged by Plaintiff include the following:

- Apple South would maintain a 25%–30% EPS growth rate over the subsequent five years. Amend.Compl. ¶¶ 35, 44, 51, 64, 71, 74, 77, 81, 84, 89.

- Apple South would open up to 65–70 restaurants in 1996 and 85 by 1997. Amend.Compl. ¶¶ 64, 70–71, 81, 84, 89, 97.

- The management team at the Marcus Acquisition restaurants was strong, and, when combined with the existing Apple South management team, would allow margins at those restaurants to grow from 13% to 16%–17% in 1995 and 1996. Amend.Compl. ¶ 35; *see also*, Amend. Compl. ¶¶ 56, 64, 66, 71, 84.

- Apple South's management team was stable and had one of the lowest turnover

rates in the industry. Amend.Compl. ¶ 35.

- While Apple South was rigorously monitoring and controlling costs at its Applebee's restaurants, it had internal procedures that set absolute minimum restaurant labor levels to assure adequate customer service. Amend.Compl. ¶ 35, 71, *see also*, Amend.Compl. ¶¶ 66, 97.

- Apple South was successfully expanding its Tomato Rumba's chain of restaurants, and they would substantially contribute to EPS growth during 1996. Amend. Compl. ¶¶ 35, 44, 51.

- Apple South would open 10 new Tomato Rumba's restaurants in 1996. Amend. Compl. ¶¶ 44.

- The closure of the Tomato Rumba's chain in March, 1996 would have a positive net effect on the Company's earning growth. Amend.Compl. ¶¶ 77

- The Company would achieve 1996 EPS of $.90–$.93 and a 30% EPS growth rate over the next five years. Amend.Compl. ¶¶ 35, 51, 56, 71, 77, 81, 84, 89, 97.

- Applebee's International's decline in same-store sales was not indicative of the performance of Apple South's restaurants. Amend.Compl. ¶¶ 64, 71.

Defendants argue that the statements in the foregoing list are Plaintiff's conclusory statements that have been distorted from their original form. A review of the Amended Complaint reveals that for each of the items above, Plaintiffs provide dates of conversations, the name of the Apple South executive making the statement, and in most instances the name of the person to whom the information was communicated. Thus the Amended Complaint pleads fraud with sufficient particularity.

Plaintiffs' allege the following reasons that the statements listed above were false when made:

---

4. The Court rejects Plaintiffs' argument that Defendants Frazier, Redus, and McLeod are liable under the group-published information doctrine because these Defendants did not sign documents which contained the allegedly misleading statements. *See In re ValuJet, Inc., Securities*

*Litigation*, 984 F.Supp. 1472, 1478 (N.D.Ga. 1997). However, viewing the evidence in the light most favorable to Plaintiffs, they have satisfied the pleading requirements for a Rule 10(b)–5 violation based on insider trading.

- Most of the managers from the Marcus Acquisition restaurants quit after Apple South purchased the franchises, as did a large number of non-management employees in those restaurants. Amend. Compl. ¶¶ 41, 48, 62, 76, 80, 105.
- Apple South caused more problems by transferring many of its experienced managers from its core restaurants to the Marcus Acquisition restaurants, as the core-restaurant managers were unfamiliar with the Marcus territory and the remaining non-managerial staff. Amend. Compl. ¶¶ 41, 48, 62, 76, 80, 105.
- Apple South's core Applebee restaurants then began to suffer from inadequate management and supervision, causing them to perform poorly and bring in below-plan revenues. Amend.Compl. ¶¶ 41, 48, 62, 76, 80, 105.
- To respond to these problems, Apple South slashed costs by laying off employees and requiring restaurants to operate at standards below Applebee's internal minimum levels. Amend.Compl. ¶¶ 41, 48, 62, 76, 80, 105.
- The company-wide expansion program suffered from, among other things, a lack of adequate management personnel to manage even the existing restaurants. Amend.Compl. ¶ 80.
- The Tomato Rumba's chain was a failure, as the restaurants' revenues on opening were consistently below forecasts and below the level at which they could operate profitably. Amend.Compl. ¶¶ 41, 48, 62, 76, 80. The chain's closure had a large negative impact on the Company and handicapped its expansion plans for the foreseeable future. Amend.Compl. ¶ 80.
- As a result, and based on internally reported information, defendants actually knew that Apple South's forecasts of rapid expansion in 1996 and 1997, of EPS gains of $.90 to $.93 in 1996 and of 30% compound EPS growth over five years could not be achieved. Amend.Compl. ¶¶ 41, 48, 62, 76, 80, 105.

The alleged statements are not immaterial on their face. A fact is material if it is substantially likely that the fact would be viewed by a reasonable investor as significantly altering the "total mix" of information available. *Basic Inc. v. Levinson,* 485 U.S. 224, 231–32, 108 S.Ct. 978, 983, 99 L.Ed.2d 194 (1988). Defendants argue that the statements at issue here are merely vague and generalized predictions upon which no reasonable investors would rely. The statements are specific enough, however, to allow the case to move forward.

### (2) Scienter

Defendants claim that Plaintiffs have failed to adequately plead the scienter requirement for Rule 10b–5 claims. Scienter is defined as a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668 (1976). As Defendants point out, under the Private Securities Litigation and Reform Act of 1995 (PSLRA), which amends the Securities Exchange Act of 1934, the pleading standard for scienter in securities fraud cases has been made more rigorous, beyond the requirements of Rule 9(b) of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u–4(b)(2). Pursuant to the PSLRA, to sufficiently allege scienter, the Complaint must, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2) (emphasis added). If the complaint fails to do so, dismissal is required. 15 U.S.C. § 78u–4(b)(3)(A).

### (i) What Standard?

Much ink has been spilled regarding the requirement of pleading a "strong inference" of the required state of mind. In adopting this standard, Congress seemed to adopt the requirements articulated in the case law of the Second Circuit. The Legislative history, however, suggests otherwise. No federal appellate court has decided what type of pleaded facts are sufficient to give rise to a "strong inference" that a defendant has acted with the required state of mind.

Under the Second Circuit's case law prior to the adoption of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), a "strong inference" could be established either (1) by alleging facts to show that defen-

dants had both motive and opportunity to commit fraud, or (2) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Shields v. Citytrust Bancorp. Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994).

As recognized by (then) United States District Judge Frank Hull in *Gross v. Medaphis Corp.*, 977 F.Supp. 1463, 1470–72 (N.D.Ga. 1997), the current debate among district courts, and represented by the respective positions of the parties in this case, is whether the PSLRA adopted a "strong inference" standard which incorporates (in part or in whole) the Second Circuit's precedent or whether the PSLRA adopted a standard more stringent than the Second Circuit's, rendering that precedent inapplicable.

The Northern District of Illinois followed pre-PSLRA Case law in *Rehm v. Eagle Finance Corp.*, 954 F.Supp. 1246 (N.D.Ill.1997). Specifically, the court found that Section 78u–4(b)(2) adopts the Second Circuit standard but declines to bind courts to the Second Circuit's interpretation of its standard. *Id.* at 1252. Then the court, being free to choose a proper standard, chose to apply the Second Circuit's interpretation. Thus, the court concluded, evidence of motive and opportunity or recklessness could suffice in pleading a Rule 10(b)–5 violation.[5]

Other courts have adopted a much more demanding standard. *In re Silicon Graphics, Inc. Securities Litigation*, 1996 WL 664639, *5–6 (N.D.Cal.1996). The *Silicon Graphics* court relied on the following language from the Conference Committee Report: "Because the Conference Committee intends to strengthen the existing pleading requirements, it does not intend to codify the Second Circuit's case law interpreting this pleading standard." *Id.* at *5 (quoting H.R.Conf.Rep. No. 104–369, 104th Cong., 1st Sess. 41 (1995)). In addition, the court noted a footnote in the Conference Committee Report which stated, "[f]or this reason, the Conference Committee chose not to include in the pleading standard certain language relat-

ing to motive, opportunity, or recklessness." *Id.* The court also noted that the Conference Committee rejected amendments to the bill that would have permitted plaintiffs to plead "motive and opportunity" and "recklessness." The *Silicon Graphics* court further buttressed its position by citing President Clinton's message regarding his decision to veto the PSLRA. In this message, the President indicated that he was prepared to support the Second Circuit's pleading standard, but "the conferees make crystal clear . . . their intent to raise the standard even beyond that level. I am not prepared to accept that." *Id.* (quoting H.R.Doc. No. 104–150, 104th Cong., 1st Sess. 240 (1995)). The *Silicon Graphics* court found that the subsequent override of the President's veto further emphasized Congress' "crystal clear intent" to heighten the pleading standard. *In re Silicon Graphics*, 1996 WL 664639 at *5.

In light of this legislative history, the district court in *Silicon* Graphics concluded that Congress intended to abolish the Second Circuit's "motive and opportunity" prong, and to eliminate "recklessness" from the other prong. *Powers v. Eichen*, 977 F.Supp. 1031, 1039 (S.D.Cal.1997). Thus the *Silicon Graphics* Court established a requirement of pleading "specific facts that constitute circumstantial evidence of *conscious behavior* by defendants." *In re Silicon Graphics*, 1996 WL 664639 at *6. Several Courts have followed this logic and imposed a "conscious behavior" standard. See e.g. *Powers v. Eichen*, 977 F.Supp. 1031, 1039 (S.D.Cal.1997); *Friedberg v. Discreet Logic, Inc.*, 959 F.Supp. 42, 48–49 (D.Mass.1997); *Norwood Venture Corp. v. Converse, Inc.*, 959 F.Supp. 205, 209 (S.D.N.Y.1997).

This Court concludes the standards of motive and opportunity and recklessness have not been erased. The Conference Committee, by stating in a footnote that it did not intend to codify the standard for motive, opportunity, or recklessness, failed to establish that Congress chose specifically to disap-

---

**5.** A majority of the district courts that have addressed this issue are in accord with *Rehm. See Page v. Derrickson*, 1997 WL 148558 at * 9 (M.D.Fla.1997); *Fugman v. Aprogenex, Inc.*, 961 F.Supp. 1190, 1195–96 (N.D.Ill.1997); *Sloane Overseas Fund, Ltd., v. Sapiens Intern. Corp.*, 941 F.Supp. 1369, 1377 (S.D.N.Y.1996); *Marksman Partners, L.P. v. Chantal Pharmaceutical Corp.*, 927 F.Supp. 1297, 1311–12 (C.D.Cal.1996); *Fischler v. AmSouth Bancorporation*, 1996 WL 686565 at *2 (M.D.Fla.1996); *Zeid v. Kimberley*, 930 F.Supp. 431, 438 (N.D.Cal.1996).

prove of these tests. When Congress wishes to supplant a well-established, judicially-created rule it knows how to do so explicitly, and in the body of the statute. *See Marksman Partners, L.P. v. Chantal Pharmaceutical Corp.*, 927 F.Supp. 1297, 1310–12 (C.D.Cal.1996).

While the points made by the *Silicon Graphics* court are valid, the opinion devotes little attention to the language of the statute itself. The Supreme Court has held that the statutory language is the focal point for interpreting a law. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 197, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). In this case, the statute is clear on its face, and thus requires no additional support from the legislative history. To follow footnote 23 of the Conference Committee Report is to adopt a footnote in a report as statutory text—something Congress could have easily done if the footnote was, in fact, supported by a majority of both the House and Senate.[6] Because Congress did not explicitly disapprove of the well-established, judicially-created rule, the Court finds that a plaintiff may satisfy the pleading requirements of a Securities fraud action with evidence of motive, opportunity, and recklessness.[7]

#### (ii) Application of the Standard

■ Plaintiffs contend that two activities of Defendants create a strong inference that Defendants acted with the required state of mind: internal reports and insider stock sales. The Amended Complaint alleges that Apple South's top executives received monthly financial reports prepared by Apple South's financial department. Amend. Compl. ¶ 28. Plaintiff claims that these reports contain detailed information, "including graphic comparisons of actual performance to forecasted performance and a narrative explanation of material variances of actual results compared to forecasted or budgeted results, which is completed within ten days after the monthly close and immediately pro-

vided to members of top management." Amend.Compl. ¶ 30. Together with the alleged misstatements, these facts are sufficient to establish recklessness on the part of Defendants Dupree and Booth. *See Page v. Derrickson*, 1997 WL 148558 *5 (M.D.Fla. 1997) (holding scienter pleading requirement is met where plaintiff alleged that all defendants acted with knowledge or reckless disregard of the misleading nature of his statements and omissions and plaintiff's injuries were caused by the purchase of defendants' stock at prices artificially inflated by the misleading statements).

■ Plaintiffs have also established a strong inference of scienter for Defendants Frazier, Redus and McLeod. Insider trading during the class period only supports a strong inference of scienter where Plaintiff can show that the trading activity was "unusual." *Rehm v. Eagle Finance Corp.*, 954 F.Supp. 1246, 1254 (N.D.Ill.1997). This requires a showing that the trading was "in amounts dramatically out of line with prior trading practices, at times calculated to maximize personal benefit from undisclosed inside information." *Id.* The three defendants who sold stock dumped a large percentage of their personal holdings: McLeod sold 82%, Frazier sold 56%, and Redus sold 40%. Forty-four percent of these sales, $ 7.7 million occurred within three to four weeks of the September, 1996 announcement. These allegations are sufficient to survive a motion to dismiss.

#### (3) Reliance and Causation

■ Where materially misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual plaintiffs on the integrity of the market price can be presumed. *In re Checkers Securities Litigation*, 858 F.Supp. 1168, 1176 (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 227, 108 S.Ct.

---

**6.** For a summary of statements by members of Congress during the floor debate of the PSLRA that raise questions about the "crystal clear intent" of Congress to remove motive, opportunity, and recklessness from the pleading standards see William H. Kuehnle, *On Scienter, Knowledge, and Recklessness Under the Federal Securities Laws*, 34 Hous.L.Rev. 121, 197 f.n. 93.

**7.** In another context, the Eleventh Circuit held that recklessness may constitute circumstantial evidence of conscious deceit. *Gross v. Medaphis Corp.*, 977 F.Supp. 1463, 1471 (N.D.Ga.1997) (citing *Painewebber Inc. v. Abry*, 103 F.3d 148, No. 96–8834, slip op., at 4 (11th Cir. Nov. 26, 1996)).

978, 99 L.Ed.2d 194 (1988)). It is reasonable to assume that misinformation disseminated into the marketplace will affect the market price. Id. at 1176. In this case Plaintiffs have demonstrated reliance by alleging that they purchased Apple South stock, which was actively traded on the NASDAQ, and that the defendants' actions artificially inflated the stock prices.

▬▬▬ To meet the causation requirements of a Section 10(b) claim the plaintiff must show actual causation and proximate causation. *Bruschi v. Brown,* 876 F.2d 1526, 1530 (11th Cir.1989). To sufficiently plead actual causation, a plaintiff can allege that the defendant's misrepresentations induced plaintiff to make the investment. *In re Checkers,* 858 F.Supp. At 1177. To sufficiently plead proximate causation, the plaintiff can allege that had they known the truth, they would not have invested, and that the untruth was in some reasonably direct way responsible for their loss. *Id.* In the instant action, Plaintiffs' allegations are sufficient to satisfy the element of causation in a Section 10(b) action.

### B. Safe Harbor and Bespeaks Caution Doctrine

Defendants contend that Plaintiffs' claims are based entirely on forward-looking statements and thus are subject to the statutory safe harbors of the Exchange Act and the Securities Act and the judicially created "bespeaks caution" doctrine. The PSLRA amended both acts by providing statutory safe harbors for certain forward-looking statements in certain circumstances. 15 U.S.C. §§ 77z–2(c), 78u–5(c).

This statutory safe harbor is similar to the judicially created "bespeaks caution doctrine," which has been adopted by the Eleventh Circuit. *See Saltzberg v. TM Sterling/Austin Assocs., Ltd.,* 45 F.3d 399, 400 (11th Cir.1995). A "forward-looking statement" includes (a) statements containing projections of revenues, income, earnings per share, or other financial items; (b) statements of the plans and objectives of management for future operations; and (c) statements of future economic performance. 15 U.S.C. § 78u–5(i)(1). The Securities Reform Act provides that a defendant shall not be liable for a forward-looking statement if it is

"identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 77z–2(c)(1)(A)(i).

Defendants' contention that they are entitled to dismissal cannot be decided at this stage of the litigation because the cautionary statements regarding forward-looking information are in separate statements or documents from those listed in the Complaint. For example, in announcing its first quarter 1996 results, Mr. Dupree stated: "We plan to open 68 new restaurants during 1996." Compl. ¶ 83; Defendants' Brief Ex. F. The cautionary statement that Defendants contend relates to this statement is contained in a Form 10–Q, which was filed with the SEC. Defendants' Brief Ex. M. However, exhibit M is not referenced in the Complaint and, pursuant to this Court's ruling on Plaintiffs' motion to strike, it cannot be considered in ruling upon the motion to dismiss.

Similarly, Defendants' argument under the Bespeaks Caution Doctrine does not warrant dismissal. The Bespeaks Caution Doctrine was adopted by the Eleventh Circuit in *Saltzberg v. TM Sterling/Austin Associates Ltd.,* 45 F.3d 399 (11th Cir.1995). Under this doctrine, the context in which a statement is made is significant. "When ... [a] document's projections are accompanied by meaningful cautionary statements and specific warnings of the risks involved, that language may be sufficient to render the alleged omissions or misrepresentations immaterial as a matter of law." *Id.* at 400.

Defendants' argument for dismissal under the Bespeaks Caution doctrine relies on documents that are outside the pleadings, and cannot be considered here. Therefore, Defendants are not entitled to dismissal based on the Bespeaks Caution Doctrine.

### C. Liability for Statements to Analysts

▬▬ Defendants make two arguments regarding professional analysts. First, Defendants argue that they cannot be held liable for statements made by professional analysts without an allegation of entanglement between Apple South executives and the analysts making the statements, or adoption of

the analysts' statements after they were made. *See Gross v. Medaphis Corp.*, 977 F.Supp. 1463, 1474 (N.D.Ga.1997). The Court agrees with Defendants' summary of the law, but fails to see its application to this case. The allegations in Plaintiffs' complaint concern statements made to analysts, and not statements made by analysts. See *In re Cirrus Logic Securities Litigation*, 946 F.Supp. 1446, 1467 (N.D.Cal.1996) ("[A] company may be liable under Rule 10b–5 for its own ... misrepresentations to analysts that reach the market, whether or not the company adopts the resulting analysts reports").

Defendants launch an attack on this front as well, referring to a district court opinion that states: "It is plainly unfair to hold defendants liable for the reporting of their statements by third parties without independent corroboration of the accuracy of the reported statements." *In re Cirrus Logic Securities Litigation*, 946 F.Supp. 1446, 1469 (N.D.Cal.1996). The foregoing quote arises from a discussion of the admissibility of the notes taken by an analyst during a conversation with an executive of the defendant company. The *Cirrus Logic* opinion involves a motion for summary judgment and, thus, a review of all admissible evidence is central to the court's holding. *See Id.* In contrast, the present action has not yet progressed to the stage in which the Court must evaluate Plaintiffs' methods of proving their allegations. The *Cirrus Logic* court noted that the analysts testimony describing the conversation with a corporate executive would be admissible. *Id.* at 1470. There may be other ways of proving Plaintiffs' allegations, but that is not an issue here. At this stage, it is enough that Plaintiffs have alleged that Defendants made misleading statements to analysts and those allegations meet the specificity requirements described *supra.* Defendants are not entitled to dismissal based on the statutory safe harbor or the Bespeaks Caution Doctrine.

#### D. *Statute of Limitations*

Finally, Defendants argue that any claim involving the Tomato Rumba's chain of restaurants should be barred by the applicable statute of limitations because Apple South announced in March 1996 that it would close the Tomato Rumba's restaurants and the Complaint in the present action was filed over a year after this announcement. *See Lampf, Pleva, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (litigation instituted pursuant to Section 10(b) and Rule 10(b)–5 must be commenced within one year after the discovery of the facts constituting the violation). This argument is not persuasive, however, because the announcement that Tomato Rumba's would be closed did not reveal the true impact of their failure. Defendants announced that closing Tomato Rumba's would strengthen Apple South's position. Plaintiff alleges that such statements were false and their falsity could not have been discovered until Apple South's September 24, 1996 announcement. The Court agrees with Plaintiffs.

### V. Conclusion

For the foregoing reasons, Plaintiffs' motion to strike is hereby **GRANTED as to Exhibits K, L, M, N, O, Q, R, and P and DENIED as to Exhibit S,** and Defendants' motion to dismiss the above-styled action is hereby **DENIED.** Nevertheless, the Court notes that its ruling involves a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal from this matter may materially advance the ultimate termination of the litigation. Much of the Court's Order deals with a 1995 statute, the PSLRA, that has not yet been addressed by an appellate court, and there is a distinct difference of opinion among the district courts that have considered the statute's proper interpretation. Furthermore, it is in the best interest of all parties to secure a final ruling on the potentially dispositive issues raised in Defendants' motion to dismiss before incurring the great expenses associated with discovery, class certification, motions for summary judgment, and trial. Therefore, the Court **RECOMMENDS** that the Eleventh Circuit Court of Appeals permit an interlocutory appeal pursuant to 28 U.S.C. § ,1292(b). Discovery in this case will be **STAYED** pending a decision by the Eleventh Circuit.