SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,

v.

Donna YUN, et al., Defendants.

No. 99–117–Civ–ORL–22A.

United States District Court,
M.D. Florida,
Tampa Division.

Jan. 12, 2001.

Mark Kreitman, Christina K. McGlosson, Larry P. Ellsworth, Securities and Exchange Commission, Washington, DC, J. Kevin Edmundson, Securities & Exchange Commission, Fort Worth, TX, for Securities and Exchange Commission.

Morris Weinberg, Jr., Laura L. Vaughan, Zuckerman, Spaeder, Taylor & Evans, Tampa, FL, Michael J. Barta, J. Bradley Bennett, Baker Botts LLP, Washington, DC, for Donna Yun.

Carl Francis Schoeppl, Schoeppl & Burke, P.A., Boca Raton, FL, Norma Shepard Lindsey, Law Office of Norma Shepard Lindsey Miami, FL, for Jerry Burch.

### ORDER

ALDRICH, District Judge.

This is an insider trading case involving the Securities and Exchange Commission ("SEC") and two defendants, Donna Yun and Jerry Burch. On December 14, 2000, the jury entered a verdict in favor of the government, finding that Yun and Burch were liable under Section 10(b) of the Securities Exchange Act of 1934. Currently, the following motions are still outstanding after the entry of the jury verdict:

1. Yun's motion for judgment as a matter of law(doc. # 175) which was renewed on December 13, 2000 (doc. # 184);

2. Yun's motion to exclude alleged co-conspirator statements and motion to dismiss the government's claims based on a failure of proof (doc. # 176);

3. Burch's motion for judgment as a matter of law(doc. # 178) which was renewed on December 15, 2000 (doc. # 197);

4. Burch's motion for a new trial (doc. # 197);

5. Yun's oral motion for judgment notwithstanding the verdict made on December 14, 2000;

6. Yun's oral motion for a new trial made on December 14, 2000.

For the following reasons, the defendants' motions are denied.

### I. Background

At the close of the SEC's case, Yun and Burch made a series of motions seeking judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a). This Court deferred ruling on these motions at the close of the SEC's case in order to review the motions, give the SEC an opportunity to respond, and allow the trial to continue expeditiously. This Court further noted that Yun and Burch could renew their motions at the close of the entire case, or incorporate them into a renewed motion for judgment as a matter of law after trial. After the jury returned with a verdict for the SEC, Yun and Burch renewed their motions for judgment as a matter of law and incorporated them into a renewed motion for judgment as a matter of law after trial under Fed.R.Civ.P. 50(b). In the alternative, Yun and Burch press their arguments as a motion for a new trial pursuant to Fed.R.Civ.P. 59.

### II. Standards

#### A. Federal Rule of Civil Procedure 50

The standard for granting judgment as a matter of law under Rule 50 is the same as the standard for granting summary judgment under Rule 56. *See Hinson v. Clinch County,* 231 F.3d 821, 827 (11th Cir.2000) *citing Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000) (discussing standard for granting judgment as a matter of law under Fed. R.Civ.P. 50, which is the "same" as the standard for granting summary judgment under Rule 56). This is true despite the difference in timing between a judgment as a matter of law before submission to the jury under Rule 50(a), or judgment as a

matter of law after the jury has returned a verdict under Rule 50(b). *See* 9A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 2524 (2d. ed.1994).

In ruling on a motion for judgment as a matter of law under Rule 50, "the court should review all of the evidence in the record." *Reeves,* 120 S.Ct. at 2110. As on summary judgment "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence ." *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* Consequently, this Court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.*

**B. Federal Rule of Civil Procedure 59**

■ Granting a motion for a new trial under Fed.R.Civ.P. 59 is within the discretion of the trial court. *See United States Equal Employment Opportunity Commission v. W & O, Inc.,* 213 F.3d 600, 610 (11th Cir.2000). Motions for a new trial may be grounded on the claim that there were "substantial errors in . . . instructions to the jury" or the "verdict is against the weight of the evidence." *See Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940). In short, Rule 59 allows this Court to grant a new trial for any reason that would "prevent manifest injustice." *Estate of Pidcock v. Sunnyland Am., Inc.* 726 F.Supp. 1322, 1333 (D.C.Ga.1989).

A district court is given broad discretion in formulating jury instructions. *See Christopher v. Cutter Laboratories,* 53 F.3d 1184, 1190 (11th Cir.1995). New trials are properly granted when jury instructions do not accurately reflect the law, and the instructions as a whole do not correctly instruct the jury. *See Broaddus v. Florida Power Corp.,* 145 F.3d 1283,

1288 (11th Cir.1998). However, new trials should only be granted for improper jury instructions if the Court is "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Id.*

When a new trial is sought on the basis of insufficient evidence, the former Fifth Circuit has cautioned that the district court should "not simply substitute [her] judgment for that of the jury, thus depriving the litigants of their right to trial by jury." *Conway v. Chemical Leaman Tank Lines,* 610 F.2d 360, 362–63 (5th Cir.1980).[1] Consequently, "new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great not merely the greater weight of the evidence." *Id.*

Given the number of motions that Yun and Burch have filed before this case was submitted to the jury, and after the jury returned with a verdict for the government, this order will consolidate their arguments, address the merits, and apply both the Rule 50 and the Rule 59 standards.

**III. Analysis**

Yun's and Burch's motions for judgment as a matter of law, or in the alternative, a new trial, and other related motions, make four basic arguments: (1) that the jury instruction concerning scienter was improper; (2) that the lack of a jury instruction regarding a benefit to Yun under the misappropriation theory of insider trading was improper, or in the alternative, that there was insufficient evidence to establish a benefit to Yun; (3) that there was insufficient evidence to establish a fiduciary duty or similar duty of trust and confidence between Yun and her husband, David Yun; and (4) that there was insufficient evidence to show a conspiracy existed, and that certain co-conspirator statements made by Burch are inadmissible hearsay as against Yun.

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

## A. Scienter

▄ Yun and Burch vigorously opposed this Court's instruction to the jury concerning scienter. That instruction stated:

> To prove tipper liability under the Misappropriation Theory, the SEC must establish, by a preponderance of the evidence, that Mrs. Yun acted with scienter. The law defines scienter as a mental state embracing either "intent to deceive, manipulate, or defraud," or "severe recklessness" in allegedly revealing the insider information.
>
> In order to have an "intent to deceive, manipulate, or defraud" one must act intentionally and deliberately, rather than mistakenly or inadvertently.
>
> In order to act with "severe recklessness," one's conduct must involve an extreme departure from the standards of ordinary care, and not merely simple or excusable neglect. The law defines reckless conduct as grossly unreasonable, rash, or intemperate. Consequently, "severe recklessness" is conduct that is extremely unreasonable, severely rash, or severely intemperate.

Jury Instructions at 21 (doc. # 186). This Court based this jury instruction on the Summary Judgment Order (doc. # 134) issued in this case by Judge Conway, which held that a showing of "severe recklessness" may prove the scienter requirement in misappropriation theory insider trading cases. *See* Summ. J. Order at 9 (doc. # 134).

Yun and Burch argued that Supreme Court and Eleventh Circuit precedent do not recognize liability for "severe recklessness" in insider trading cases. *See e.g.* Def. Yun's Renewed Mot. J. Matter of Law at 11–13 (doc. # 184). Rather, Burch and Yun argued that a "severe recklessness" instruction is appropriate only in stock fraud cases, where an insider makes a material representation about the value of a company. *Id. citing Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1286 (11th Cir.1999) and Eleventh Circuit Pattern Jury Instruction Civil, 2000, at § 4.1.

During the jury instruction conference, this Court, under the law of the case doctrine, gave the reasons for its decision to include the "severe recklessness" jury instruction. In ruling from the bench, this Court stated in relevant portion:

> Judge Conway bases her ruling that scienter can be found in insider trading misappropriation cases with a showing of severe recklessness on *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1286 (11th Cir.1999). This case is probably distinguishable on the grounds that it is a stock fraud case, and not an insider trading case. Stock fraud is where an insider gives a material misrepresentation to an outsider, and that outsider relies on that misrepresentation and buys the stock. These types of cases are common where companies lie about their profits, or lie about other problems in the company.
>
> Two cases can be found in the Eleventh Circuit that note that scienter can be found in insider trading cases on a finding of severe recklessness. *Bryant v. Apple South,* 25 F.Supp.2d 1372, 1381 (M.D.Ga.1998) (noting scienter met in an insider trading case on a showing of recklessness), *vacated on other grounds by Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1286 (11th Cir.1999); *SEC v. Ginsburg,* No. 99–8694C–IV, 2000 WL 1299020 at *4 (S.D.Fla. Jan.10, 2000). Of these two cases, *Ginsburg* is directly on point. In that case, the Southern District of Florida district court noted that "severe recklessness" can be used to show tipper liability in a Misappropriation Theory insider trading case.
>
> Given such case law, the law of the case doctrine heavily favors adherence to Judge Conway's rulings of law on summary judgment. Under the most recent decision analyzing law of the case in the Eleventh Circuit, reversal of a previous decision is warranted in the following three circumstances:
>
> (1) New and substantially different evidence is produced;

(2) There has been a change in controlling legal authority; or

(3) The prior decision was in clear error.

*Oladeinde v. City of Birmingham,* 230 F.3d 1275, 1288 (11th Cir.2000).

Here Judge Conway's Summary Judgment Order falls under none of these categories. As I noted when I reviewed the parties' summary judgment motions, no new facts or arguments are being made. That is, Judge Conway considered the same facts and arguments that the defendants are now presenting. Moreover, after a thorough check of the case law, none of Judge Conway's controlling authority has been overturned or vacated.

"Clear error" is the most likely avenue for a decision by me to overturn Judge Conway's prior rulings of law on summary judgment. BLACK'S LAW DICTIONARY defines "clear error" as "findings based on substantial error in proceedings or misapplication of the law ... or by an erroneous view of the law." BLACK'S LAW DICTIONARY 251 (6th Ed.1990). As the basis of appellate review (which is what, in effect, the defendants are asking me to do) there must be a "definite and firm conviction that a mistake has been committed." *Id.*

In this situation, Judge Posner's opinion in *Williams v. Commissioner of the Internal Revenue,* 1 F.3d 502, 503 (7th Cir.1993) is very persuasive. Posner writes:

> The situation is different when judges are changed midstream. Litigants have a right to expect that a change in judges will not mean going back to square one. The second judge may alter previous rulings if new information convinces him they are incorrect, but he is not free to do so even though the time for reconsideration has not expired, *merely because he has a different view of the law or facts from the first judge* ... (citations omitted) (emphasis added). In this situation, the law of the case doctrine has bite.

Here, Judge Conway's decision that "severe recklessness" is applicable in insider trading cases may indeed be an inaccurate statement of the law. This Court, if facing the issue on first impression, might in fact have decided that only intentional conduct is applicable in a scienter finding in insider trading cases. Indeed, the Eleventh Circuit may clarify the situation in this very case. However, other district courts have made the same findings of law as Judge Conway. Indeed one district court made the finding that "severe recklessness" is applicable in misappropriation cases. *See Ginsburg,* 2000 WL 1299020 (S.D.Fla.2000).

Under such circumstances, Judge Conway's rulings of law must be given substantial deference. In short, this Court cannot conclude that Judge Conway's decision was in "clear error" ... and Judge Conway's previous findings of law must stand.

In the current round of motions, Yun and Burch renew their arguments that there is no liability for "severe recklessness" in misappropriation theory insider trading cases, largely referencing arguments and case law previously presented and ruled upon by this Court. *See e.g.* Def. Yun's Mot. J. Matter of Law at 11–13 (doc. # 175) (citing *SEC v. Switzer,* 590 F.Supp. 756, 766 (W.D.Okla.1984) for the proposition that liability in insider trading cases cannot result from an inadvertent disclosure); Def. Burch's Second Renewed Mot. J. Matter of Law at 17–20 (doc. # 197) (same). More important, the arguments concerning severe recklessness and scienter are precisely the arguments that were presented and ruled upon by Judge Conway in her Summary Judgment Order. *See* Def. Burch's Mem. Support Mot. Summ. J. at 15–17 (doc. # 67). Consequently, as previously stated from the bench, this Court will not revisit this issue given the substantial equitable considerations to litigants faced with a change of

judges under the law of the case doctrine. *See Williams,* 1 F.3d at 503.

Yun does present one argument that this Court has not previously addressed. In her Second Renewed Motion for JMOL, Yun argues that this Court's reliance on *Ginsburg,* 2000 WL 1299020, is misplaced, since that case dealt with the severe recklessness of a tippee not a tipper. *See* Def. Yun's Second Renewed Mot. J. Matter of Law at 5–6. However, Yun's reading of *Ginsburg* is not correct. While *Ginsburg* does deal with a scienter finding of "severe recklessness" as applied to the tippee, *Ginsburg,* 2000 WL 1299020, at *6, it also clearly applies "severe recklessness" to a scienter finding for the tipper. *See id.* at *4.

Accordingly, Yun and Burch's various motions for judgment as a matter of law, or in the alternative, a new trial based on the argument that the scienter jury instruction was in error are denied.

## B. Tipper Benefit

■ Yun and Burch also vigorously opposed this Court's lack of an instruction concerning the necessity of a benefit to the tipper, Yun. This Court did not include an instruction concerning a tipper benefit in order to remain consistent with Judge Conway's rulings of law on summary judgment. *See* Summ. J. Order at 6 (doc. # 134) ("Therefore, the Court concludes, as a matter of law, that the SEC is not required to prove as an element of tipper liability that Mrs. Yun traded in Scholastic stock or benefitted from Burch's trades."). Moreover, this Court was persuaded by two cases cited by Judge Conway in her order establishing that a benefit need not be shown in misappropriation theory insider trading cases. *See* Summ. J. Order at 6 (doc. # 134) *citing SEC v. Musella,* 748 F.Supp. 1028, 1038 n. 4 (S.D.N.Y.1989) ("The misappropriation theory of liability does not require a showing of a benefit to the tipper ...") and *SEC v. Willis,* 777 F.Supp. 1165, 1172 n. 7 (S.D.N.Y.1991) (same).

In the current round of motions, Yun and Burch again renew their arguments that a tipper benefit is required to impugn liability under the misappropriation theory of insider trading. *See* Def. Yun's Renewed Mot. J. Matter of Law at 17–18 (doc. # 184) *citing United States v. O'Hagan,* 521 U.S. 642, 652, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997) and *SEC v. Lambert,* 38 F.Supp.2d 1348, 1351 (S.D.Fla.1999); Def. Burch's Second Renewed Mot. J. Matter of Law at 15 (doc. # 197). However, these arguments are substantially similar to the arguments presented to and ruled on by Judge Conway in her Summary Judgment Order. *See* Mem. & Statement of Undisputed Facts in Support of Yun's Mot. Summ. J. at 18 (doc. # 64). As stated earlier, this Court will not disturb Judge Conway's previous rulings of law unless they fall under one of the categories described in *Oladeinde,* 230 F.3d at 1288. Since no new arguments are presented and there has been no change in controlling legal authority, neither of these categories are suitable for reconsideration under the law of the case. *See id.*

However, in the current round of motions, Burch does present the novel argument that Judge Conway's prior rulings were in clear error since they were based on miscited case law. *See* Def. Burch's Second Renewed Mot. J. Matter of Law at 15–17. However, at least two of the cases cited by Judge Conway clearly state, albeit in dicta, that misappropriation theory insider trading cases do not require a showing of tipper benefit. *See Musella,* 748 F.Supp. at 1038 n. 4; *Willis,* 777 F.Supp. at 1172 n. 7. Moreover, the First Circuit has recently recognized that case law is unsettled as to whether a tipper benefit is required to impugn liability under misappropriation theory insider trading. *See SEC v. Sargent,* 229 F.3d 68, 78 (1st Cir. 2000). Under such circumstances, the law of the case doctrine instructs this Court to adhere to Judge Conway's prior ruling of law. *See Williams,* 1 F.3d at 503 ("Litigants have a right to expect that a change

in judges will not mean going back to square one.").

■ Finally, Burch and Yun argue that despite this Court's refusal to include an instruction to the jury concerning a tipper benefit, the jury was nonetheless instructed that they must find a "self-serving use" for the tip. *See* Jury Instructions at 16 (doc. # 186). Yun and Burch further argue that the government did not present evidence sufficient to show that Yun's alleged tip had a "self-serving use." *See* Def. Burch's Second Renewed Mot. J. Matter of Law at 17 (doc. # 197); Def. Yun's Mot. J. Matter of Law at 15–17 (doc. # 175).

However, sufficient evidence was presented at trial for a reasonable juror to conclude that there was some "self-serving use" for the alleged tip. Yun and Burch were co-workers who were, by their own admission, friendly. Moreover, they had, over the course of several years, shared commissions on numerous real estate deals. Case law clearly establishes that a mere gift is enough to establish a benefit or other self-serving use. *See SEC v. Warde*, 151 F.3d 42, 47 (2d Cir.1998). Moreover, such intangible benefits as continued good relations or networking contacts are sufficient to establish benefit or self-serving use. *See Sargent*, 229 F.3d at 77. Consequently, a reasonable juror could conclude that Yun's tip to Burch was some gift between co-workers, or used to maintain a good relationship between frequent partners in numerous real estate deals. As such, judgment as a matter of law is inappropriate under this argument.

Moreover, this Court cannot conclude that a finding of "self-serving use" is against the "great . . . weight of the evidence" as required under Rule 59 in the Eleventh Circuit. As stated earlier, the SEC presented evidence sufficient to show that Yun may have furnished the tip for some intangible benefit, such as a gift. Moreover, the speed with which the SEC began investigating Burch's trade in Scholastic options, less than twelve hours after he realized his profits, suggests that any evidence of a "self-serving use" will be largely circumstantial.

Accordingly, Yun and Burch's various motions that judgment as a matter of law, or in the alternative, a new trial based on the argument that a tipper benefit was not included in the jury instructions, or that there was insufficient evidence to show a "self-serving use," are denied.

## C. Fiduciary Duty

■ At the close of the government's case, Yun and Burch moved for judgment as a matter of law arguing that insufficient evidence existed to establish a fiduciary duty or similar duty of trust and confidence. *See* Def. Yun's Mot. J. Matter of Law at 11–15. A showing of a fiduciary duty or similar duty of trust and confidence between the insider and the tipper is required under the misappropriation theory of insider trading. *See* Summ. J. Order at 6–8 (doc. # 134) *citing United States v. Chestman*, 947 F.2d 551 (2d Cir.1991). These arguments were renewed after the jury found for the government. *See* Def. Burch's Second Renewed Mot. J. Matter of Law at 2–10 (doc. # 197).

■ Yun and Burch both correctly note that Judge Conway ruled that "[U]nder Florida law, Donna Yun did not owe a formal fiduciary duty to her husband while they were negotiating the division of their marital assets." *See* Summ. J. Order at 7 (doc. # 134). Yun goes on to argue that this ruling by Judge Conway effectively forecloses the case since the SEC cannot establish that "Mrs. Yun learned of the Scholastic information from Mr. Yun as part of their fiduciary relationship." *See* Def. Yun's Mot. J. Matter of Law at 11 (doc. # 175). Similarly, Burch argues that the "SEC was legally foreclosed by Judge Conway's prior ruling from permitting the jury to consider the issue whether the post-nuptial negotiations could, in conjunction with other evidence, give rise to a fiduciary duty or functional equivalent of the same." *See* Def. Burch's Second Renewed Mot. J. Matter of Law at 5 (doc.

#197). Given these prior rulings, Yun and Burch argue that the law of the case binds this Court to enter judgment as a matter of law against the government. *Id.*

Yun and Burch's reading of Judge Conway's prior ruling are not persuasive. While Judge Conway did state that a *"formal* fiduciary duty" (emphasis added) could not arise under Florida law during the negotiation of a post-nuptial agreement, she specifically noted in the next sentence of her order, that under the misappropriation theory, "the fact finder must also consider whether there existed a similar relationship of trust and confidence." *See* Summ. J. Order at 7 (doc. #134). Moreover, citing *Chestman,* Judge Conway noted that "the repeated disclosure of business secrets between family members may substitute for a factual finding of dependence and influence and thereby sustain a finding of the functional equivalent of a fiduciary relationship." *Id. citing Chestman,* 947 F.2d at 569. Judge Conway further noted that "informal fiduciary or confidential relationships are ... recognized under Florida law ... 'where there has been a special confidence reposed in one, who in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence.'" *Id. citing Atlantic National Bank of Florida v. Vest,* 480 So.2d 1328, 1332 (Fla.Ct.App.1986).

Given this language, the most natural reading of Judge Conway's previous ruling is that while a formal fiduciary duty could not arise *solely* from the post-nuptial negotiations, the post-nuptial negotiations *could be considered* by the jury in determining whether a similar duty of trust and confidence existed as required by *Chestman.* Moreover, such a reading is consistent with *Chestman.* In that case, the Second Circuit analyzed whether a relationship could be the "functional equivalent" of a formal fiduciary relationship, such as between an attorney and client. *Chestman,* 947 F.2d at 567–68. The implication of

such an analysis is that a non-formal fiduciary-like relationship can be the basis for liability under misappropriation theory insider trading.

Yun and Burch further contend that there is insufficient evidence to support a finding that a "fiduciary duty or similar duty of trust and confidence" existed between Donna Yun and David Yun. *See* Def. Yun's Mot. J. Matter of Law 13–15 (doc. #175); Def. Burch's Second Renewed Mot. J. Matter of Law at 5–9. As noted previously, "repeated disclosure of business secrets between family members" may establish the requisite duty for misappropriation theory insider trading. *Chestman,* 947 F.2d at 569. Here, Yun and Burch note that the majority of David Yun's confidences to Donna Yun concerning Scholastic revolved around "people issues." *See* Def. Burch's Second Renewed Mot. J. Matter of Law at 7 (doc. #197); *see also* Def. Yun's Mot. J. Matter of Law at 14 (doc. #175) (arguing that the information related from David Yun to Yun amounted to "office gossip").

Such arguments, however, do not hurdle the requisite standard for appropriate relief under Rule 50. While "office gossip" may not be enough to establish a functional equivalent to fiduciary duty, discussion of "people issues" cannot categorically be excluded as non-business secrets.[2] Yun herself stated, during trial, that she was instructed by David Yun to keep information concerning "people issues" at Scholastic in the strictest confidence. More importantly, the SEC produced evidence that David Yun had consistently entrusted Yun with confidential information concerning whether the Book Fairs division of Scholastic would meet its sales goals. While David Yun entrusted Yun with this knowledge in connection with a yearly retreat, Yun understood that such information was meant to be kept in confidence. In addition, David Yun's confidence to Yun concerning the impending drop in Scholastic's

2. Indeed, dismissal or resignation of upper level management due to personal difficulties often affects a company's performance and stock price.

stock price is an additional factor that the jury could consider. Such specific, non-public, financial information, coupled with specific non-public, management related information ("people issues") consistently entrusted to Yun over the course of several years, raise a legitimate jury question as to whether or not a "fiduciary duty or similar duty of trust and confidence" existed between David Yun and Donna Yun. *See* Summ. J. Order at 6 (doc. # 134). Judgment as a matter of law is inappropriate under this argument.

Moreover, Yun and Burch's arguments do not hurdle the standard enunciated by the Eleventh Circuit under Rule 59. While this Court recognizes that Yun's and David Yun's statements during trial maintain a shroud of ambiguity over the nature, extent and specificity of their confidences, this Court cannot conclude that the jury's conclusion was against the "great . . . weight of the evidence." *Conway*, 610 F.2d at 362–63. In sum and substance, David Yun's repeated disclosure of non-public, financial information concerning the Scholastic Book Fairs division's achievement of its sales goals, his repeated disclosure of nonpublic, confidential information concerning management related information ("people issues"), along with the specific confidence to Yun that Scholastic's stock price would drop, establishes a substantial likelihood that a fiduciary duty or similar duty of trust and confidence existed between Donna Yun and David Yun. A new trial is inappropriate under this argument.

Accordingly, Yun and Burch's various motions for judgment as a matter of law, or in the alternative, a new trial, under the argument that there is insufficient evidence to support a finding of a fiduciary or similar duty of trust and confidence are denied.

## D. Co–Conspirator Statements

■ In a pre-trial hearing, this Court made a conditional ruling concerning the admission of certain statements by Burch to other persons concerning the origin of his alleged tip. During his purchase of Scholastic options, Burch told his broker, James Whitely, that he had received the alleged tip at a party held at the Isleworth Country Club. Moreover, Burch told his friend Jim Skalko, as well as SEC investigators, that he received the alleged tip at the Isleworth party, almost immediately after he concluded the sale of the Scholastic options. In a pre-trial ruling, this Court held that Burch's statements to SEC investigators concerning where he received the alleged tip was inadmissible hearsay against Yun. This Court reasoned that a coconspirator's statements to law enforcement officials referring to other conspirators, are not generally considered to be in the "course and furtherance" of a conspiracy as required under Fed.R.Evid. 801(d)(2)(E).. *See United States v. Butler*, 41 F.3d 1435, 1447 (11th Cir.1995) (conspiracy terminated once one party makes a disclosure of an illegal scheme to law enforcement officials); *United States v. Williams*, 87 F.3d 249, 254 (8th Cir.1996) ("statements incriminating others by one coconspirator are generally not made in furtherance of a conspiracy"). However, this Court reasoned that statements to non-SEC officials, such as James Whitely, could be imputed against Yun since they were made in the course and furtherance of the conspiracy. This Court further noted that the admissibility of these statements against Yun were conditional on a proper showing as to whether or not a conspiracy existed. *See Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).

After the close of the government's case, Yun moved to exclude Burch's co-conspirator statements on the basis that the government had not proven a conspiracy by a preponderance of the evidence. *See id.* at 175–76, 107 S.Ct. 2775. This Court denied that motion, noting that enough circumstantial evidence existed to establish that Yun and Burch did engage in a conspiracy or some other joint undertaking, in order to allow admission of the co-conspirator statements. Moreover, this Court further noted that Burch's and Yun's denials that

a conspiracy or similar joint undertaking occurred were largely jury credibility issues, and were not persuasive in determining the admissibility of Burch's statements against Yun. After the close of trial, Yun again renewed her motion to exclude the co-conspirator statements, and sought dismissal of the government's claims. *See* Def. Yun's Renewed Mot. Exclude Co-Conspirator Statements (doc. # 176).

As ruled on earlier from the bench, this Court finds that Burch's statements to non-SEC investigators qualify as admissions under the co-conspirator hearsay exception. Sufficient circumstantial and direct evidence establish, by a preponderance of the evidence, that a conspiracy or other joint undertaking existed between Burch and Yun. A non-exhaustive list includes the suspicious timing of the alleged tip and Burch's purchase of the Scholastic options, Burch's prior history establishing no experience with put options, the inherent riskiness of buying those put options with a 48 hour expiration, the amount of money relative to Burch's yearly income spent on these options, the long-term business and social relationship between Burch and Yun, the telephone calls made by Yun to Burch after the beginning of the SEC investigation, and the testimony of witnesses establishing that Burch received the tip from Yun at the Isleworth party.

Inasmuch as Yun's motion to exclude the co-conspirator statements seeks a dismissal of the government's claims based on insufficient evidence, the Rule 50 standard requires this Court to deny the motion. *See* Def. Yun's Renewed Mot. Exclude Co-Conspirator Statements at 5 (doc. # 176). Sufficient evidence clearly exists for a reasonable juror to find for the government. This is especially true assuming that the jury disbelieved many, if not most of the defense witnesses' testimony. Such a conclusion is eminently possible in this trial, given evidence of the discrepancies between Burch's and Yun's initial communication to SEC investigators and other persons, and the testimony they presented at trial. Evidence of collusion between Burch and Yun during the SEC investigation also cuts against a jury believing the testimony of the defendants. Moreover, there is an absence of documentary evidence requiring any other result.

Inasmuch as Yun's motion to exclude to co-conspirator statement seeks a new trial under Rule 59, this Court denies this motion for reasons similar to those just stated. Given the direct and circumstantial evidence presented, as well as the significant credibility problems considering Burch and Yun's oft changing stories, this Court cannot conclude that the jury's verdict was against the "great ... weight of the evidence." *Conway*, 610 F.2d at 362–63.

Yun's motion to exclude certain co-conspirator statements, and dismissal based on a failure of proof, or in the alternative, a new trial, are denied.

## IV. Conclusion

For the foregoing reasons the following motions are denied:

1. Yun's motion for judgment as a matter of law (doc. # 175), renewed on December 13, 2000 (doc. # 184);

2. Yun's motion to exclude alleged co-conspirator statements and to dismiss the government's claims based on a failure of proof (doc. # 176);

3. Burch's motion for judgment as a matter of law(doc. # 178), renewed on December 15, 2000 (doc. # 197);

4. Burch's motion for a new trial (doc. # 197);

5. Yun's oral motion for judgment notwithstanding the verdict made on December 14, 2000;

6. Yun's oral motion for a new trial made on December 14, 2000.

Accordingly, this case is closed, and final judgment is entered in favor of the Securities and Exchange Commission.

Civil penalties will be assessed at a future date, and this judgment will be amended.

This order is final and appealable.

IT IS SO ORDERED.