Valinda F. OLADEINDE, Patricia L. Fields, Plaintiffs-Counter-Defendants-Appellees-Cross-Appellants,

v.

BIRMINGHAM, CITY OF, a municipal corporation, Defendant-Counter-Claimant-Appellant-Cross-Appellee,

Richard Arrington, individually and in his capacity as Mayor of the City of Birmingham, Defendant-Counter-Claimant,

Arthur Deutsch, individually and in his capacity as Provisional Captain of Administrative Vice-Narcotics Division, Julius Walker, individually and in his capacity as Provisional Captain of Administrative Vice-Narcotics Division, Defendants-Appellants-Cross-Appellees,

R. L. Webb, individually and in his capacity as Provisional Captain of Internal Affairs Division, Defendant.

No. 98-6665.

United States Court of Appeals,

Eleventh Circuit.

Oct. 16, 2000.

Appeals from the United States District Court for the Northern District of Alabama. 9no. 91-00196-CV-AR-S), William M. Acker, Jr., Judge.

Before BIRCH, BARKETT and ALARCÓN*, Circuit Judges.

ALARCÓN, Circuit Judge:

Former Police Chief Arthur Deutsch and Captain Julius Walker appeal from the denial of their motions for a judgment as a matter of law filed pursuant to Rule 50 of the Federal Rules of Civil Procedure. The Rule 50 motions were filed by Chief Deutsch and Captain Walker following the jury's verdict awarding damages to the plaintiffs, Valinda F. Oladeinde ("Sergeant Oladeinde") and Patricia Fields ("Officer Fields"), in this 28 U.S.C. § 1983 civil rights action. Chief Deutsch and Captain Walker contend, *inter alia,* that the evidence produced at trial demonstrated that the action should have been dismissed pursuant to the defense of qualified immunity. They also assert that the district court improperly allowed the jury to determine whether the plaintiffs engaged in any protected speech.

The City of Birmingham ("the City") appeals from the district court's order granting Sergeant Oladeinde's motion for injunctive relief and requiring the City to promote her. The City maintains that the injunctive relief ordered by the district court was contrary to the jury's factual findings in its special verdict.

Sergeant Oladeinde cross-appeals from the judgment entered against her on the City's counterclaim

*Honorable Arthur L. Alarcón, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

for breach of implied contract. She argues that the judgment resulted from improper jury instructions and argument.

We reverse the denial of Chief Deutsch's and Captain Walker's motions for judgment as a matter of law because we conclude that the plaintiffs' speech was not protected under the First Amendment. We reverse the order requiring the City to promote Sergeant Oladeinde because her First Amendment rights were not violated. We affirm the judgment against Sergeant Oladeinde for breach of implied contract because any error in the jury instructions or argument was harmless.

I

FACTUAL BACKGROUND

A.    *Events that Occurred Prior to January 4, 1991*

Officer Fields became a member of the Birmingham Police Department ("BPD") in June of 1970 as a citation officer. Her initial assignment was to issue citations for parking meter violations. In 1972, she was promoted to the position of police officer and assigned to patrol duty. In March 1989, Officer Fields was assigned to the Administrative Vice-Narcotics Unit ("Narcotics Unit"). Her team leader was Sergeant Oladeinde.

Sergeant Oladeinde joined the BPD in July of 1981. In November of 1985, she was promoted to sergeant and assigned to the Narcotics Unit. Sergeant Oladeinde and Officer Fields were assigned to the Organized Crime Drug Enforcement Task Force ("Task Force"). The Task Force consisted of local, state, and federal officers whose mission was to investigate drug trafficking, money laundering, crimes of violence and firearms violations.

Beginning in 1988, Sergeant Oladeinde and Officer Fields were told by informants that certain drug traffickers had suspicious contacts with city officials and officers of the BPD. Sergeant Oladeinde filed a written report in 1988 with her commanding officer setting forth alleged improper conduct of several BPD officers.

In the summer of 1989, Sergeant Oladeinde participated in a meeting with members of the Federal Bureau of Investigation and the United States Attorney's Office. Also present was Captain R.L. Webb ("Captain Webb") of the BPD Internal Affairs Division ("IAD").[1] The purpose of the meeting was to discuss

---

[1] IAD is the unit of the BPD charged with the responsibility of investigating corruption by members of the BPD.

police corruption. The BPD representatives requested federal resources and manpower to investigate allegations from informants that BPD police officers were extorting money from drug dealers.

As a team leader, Sergeant Oladeinde was responsible for funds to be used by officers in her group to purchase drugs in undercover operations. In the latter part of 1989, Sergeant Oladeinde discovered that she could not account for some of these funds. She reported this problem to her commanding officers. An internal audit was conducted in January of 1990. The audit disclosed that Sergeant Oladeinde could not account for $4,484 expended between March 1, 1986 and December 31, 1989.

As a result of the internal audit, the BPD requested that the auditors from the City's Internal Audit Division examine the Narcotic Unit's records. On February 21, 1990, Sergeant Oladeinde discovered that one of the city's auditors, Mitchell Smith ("Smith"), was "on deferred prosecution for drugs." Sergeant Oladeinde reported to the commander of the Narcotics Unit, Captain Johnnie Johnson, that Smith had access to records containing the names of confidential informants. At Captain Johnson's request, Smith was removed from the audit of the Narcotics Unit's records. The City's Internal Audit Division determined that Sergeant Oladeinde failed to account for $2,056 in BPD funds. Sergeant Oladeinde testified that she could not explain what happened to this money. On advice of its counsel, the City did not write a letter to Sergeant Oladeinde at that time to request that she repay the money.

On May 10, 1990, Officer Nicholas Mazzarella filed a complaint alleging widespread corruption in the Narcotics Unit. Chief Deutsch ordered the IAD to question more than a dozen officers including Sergeant Oladeinde. On May 21, 1990, Sergeant Oladeinde and Captain Webb went to the United States Attorney's office. There, Sergeant Oladeinde reported that there was corruption in the BPD.

On June 14, 1990, Sergeant Oladeinde was interviewed by Officer V.O. Little of IAD regarding the missing Narcotics Unit funds. On June 21, 1990, Sergeant Oladeinde was subjected to three polygraph examinations by Officer Little. Officer Little informed Sergeant Oladeinde that the tests revealed that she was "having trouble" with questions concerning money, stealing, and the sale of information.

Officer Little gave Sergeant Oladeinde another polygraph examination on June 26, 1990. On June 27, 1990, Officer Daugherty also gave her a polygraph examination. On July 2, 1990, Captain Webb met with the United States Attorney, Frank Donaldson. The United States Attorney requested that the BPD temporarily suspend the investigation of Sergeant Oladeinde because she was assisting the United States Attorney's Office with its case against Curtis Motley, an alleged drug dealer. The United States Attorney wanted to make sure that Sergeant Oladeinde was available to assist in prosecuting Motley and that her

credibility was not damaged by an active investigation of her. Captain Webb agreed to the request. On July 19, 1990, Sergeant Oladeinde wrote a letter addressed to Chief Deutsch complaining about the length of the IAD's investigation of the Narcotics Unit stemming from Officer Mazzarella's complaint.

On July 31, 1990, Captain Webb and Captain Walker testified under subpoena during the trial of Ricky Germany that they would not believe the testimony of Sergeant Oladeinde. Captain Walker's opinion was based upon hearing Sergeant Oladeinde's testimony in two depositions, her responses during polygraph examinations, and her failure to account for funds she had received for the purchase of narcotics in the undercover work of her unit. The following day, Sergeant Oladeinde complained to members of the United States Attorney's Office. She reported that Captain Webb was involved with a known felon, David Swanson, and had improperly informed him that he was under investigation.

Captain Walker was assigned as the Commander of the Narcotics Unit in September 1990. On October 2, 1990, Mr. Swanson complained to the Birmingham City Council during a public meeting that Sergeant Oladeinde was harassing him. On October 3, 1990, Sergeant Oladeinde reported to Captain Walker that she had observed Lieutenant James Hope's car parked at Regina Hunter's house for several hours. Regina Hunter, the wife of a convicted drug dealer, had previously been convicted of possession of cocaine. Captain Walker told Sergeant Oladeinde to do her job and "[n]o retribution would occur."

In November 1990, Officer Fields, while undergoing a polygraph examination, told Sergeant Daugherty that she would not tell Lieutenant Hope anything because of his alleged personal involvement with Regina Hunter. Officer Fields filed a complaint with the IAD concerning Lieutenant Hope. When Officer Fields returned to the Narcotics Unit, Captain Walker told her he was very angry and stated that he was "like a snake fixing to strike." Officer Fields testified that she felt intimidated by Captain Walker's demeanor.

On November 6, 1990, Sergeant Oladeinde was questioned about Lieutenant Hope. Lieutenant Hope and Captain Walker were questioned on November 7, 1990, about Officer Field's complaint about Lieutenant Hope. On November 8, 1990, Sergeant Oladeinde was given a polygraph examination by Officer Daugherty. He telephoned Sergeant Oladeinde the next day to inform her that she passed the polygraph examination. Officer Fields and Captain Walker were not asked to submit to a polygraph examination. Later that month, Lieutenant Hope was removed from the Narcotics Unit and demoted because he refused to discontinue his contacts with Regina Hunter.

B.      *Events that Occurred on January 4, 1991 and Thereafter*

On January 4, 1991, Sergeant Oladeinde requested permission to meet with Captain Walker. When

she and Officer Fields arrived in Captain Walker's office, he placed a derringer, a short barreled pocket pistol, on his desk and set up two bullets next to it. The derringer was broken down so that you could see through the barrels. Captain Walker then stated: "I don't need my gun to talk to you ladies, do I?" Officer Fields replied: "Captain Walker, are you planning on committing suicide?" Shortly thereafter, Captain Walker put the derringer back in the desk drawer.

This exchange occurred *before* Sergeant Oladeinde and Officer Fields disclosed the purpose of their visit.[2] The record discloses the following testimony regarding the derringer:

Q.   [Cross-examination of Sergeant Oladeinde by Mr. Thomas, counsel for Captain Walker]. Now as I understand—as I have understood your testimony today in trial and your deposition, the derringer was placed—pulled out of the drawer and placed on the table prior to anything being said?

A.   That's right, Mr. Thomas. I hadn't said a word other than walk in the captain's office where he invited me to come in there, and he pulled a gun out of his desk at me.

Q.   And you had not said one word?

A.   I hadn't uttered a word before he got the gun out.

Officer Fields asked Captain Walker for permission to talk to the district attorney about the "records case" because she had seen something involving two police officers. Captain Walker asked Officer Fields to describe the information she wished to report to the district attorney. Officer Fields refused. Sergeant Oladeinde informed Captain Walker that Officer Fields had revealed the facts to her. Sergeant Oladeinde refused Captain Walker's order that she reveal the information to him.

Captain Walker asked Officer Fields and Sergeant Oladeinde whether they had information that an officer had committed a crime, or may have done so. Officer Fields said: "No." Following their refusal to disclose the nature of the conduct observed by Officer Fields, Captain Walker denied their request to go to the district attorney. Instead, he directed them to make their report to the IAD.

After leaving Captain Walker's office, Sergeant Oladeinde and Officer Fields went to Deputy Chief Howard Miller's office and asked him to seize the derringer from Captain Walker. He refused. Captain Walker informed Deputy Chief Miller later that same day about the derringer incident. Captain Walker stated that it was a stupid mistake and that he "messed up ... cracked a joke and it didn't work." Sergeant Oladeinde wrote a letter to Deputy Chief Miller complaining about the incident.

Upon the recommendation of Deputy Chief Miller, Joe Whatley, an attorney for the City, met with

---

[2]At this time, an investigation was ongoing regarding whether Chief Deutsch had tampered with the records pertaining to the arrest of the mayor's daughter.

Sergeant Oladeinde and Officer Fields on January 8, 1991 regarding the derringer incident. On January 10, 1991, Sergeant Oladeinde wrote a follow-up letter to Mr. Whatley, documenting their conversation and stating, "I do not AT THIS TIME wish to make a complaint." Sergeant Oladeinde reported to Chief Deutsch on January 11, 1991, in a written memorandum, that she had been in contact with Mr. Whatley regarding "the documents case." Captain Walker's conduct was investigated. He received command discipline for displaying the derringer.

On January 16, 1991, Captain Walker sent a memorandum recommending that Sergeant Oladeinde be transferred from the Narcotics Unit. The memorandum stated:

> One of the supervisors currently assigned to the Administrative Vice Division-Narcotics Detail is Sergeant V.F. Oladeinde. It is my request that for the good of the Department as well as the good of the Sergeant that consideration be given to the possible transfer of this supervisor into another Unit. Sergeant Oladeinde has been assigned to Narcotics since her promotion to the rank of Sergeant. She has, for the most part, done an adequate job. However, I have noticed from the inception of my command that there are several deficiencies in this supervisors [sic] performance. It appears that this sergeant has an "ax to grind" either with me or with other superior officers.
>
> It is my concern that this Unit operate in an effective, efficient and professional manner. This cannot be achieved with the turmoil from within.
>
> This supervisor appears to run her team in such a manner that it is not conducive to a smooth running operation. I feel that this sergeant's lack of supervisory skills is the prime reason for this.
>
> I recommend that this sergeant be put in a patrol atmosphere where she would undoubtedly learn supervisory skills in a structured environment. With this type training this supervisor may one day become a well rounded supervisor and possibly may be able to see a broader picture concerning this Department as opposed to the narrow minded view she has exhibited in the past.

On or about January 24, 1991, Captain Walker met with Sergeant Oladeinde, Officer Fields, and Lieutenant J.J. Todd. Sergeant Oladeinde stated that a reliable confidential informant had reported to her that Erica Arrington, the daughter of Birmingham's mayor, Jeff Germany, a Jefferson County Commissioner, and William Bell, a city council member, were seen at a party around a table that had cocaine on it. Captain Walker asked Sergeant Oladeinde to identify her informant. She refused to do so.

Captain Walker then instructed Sergeant Oladeinde and Officer Fields not to make this information public unless it was verified and then submitted to him. Captain Walker explained to them that informants sometimes lie "[s]o make real sure that you verify this information before you destroy lives."

On January 25, 1991, Captain Walker received a memorandum from Sergeant Oladeinde in which she informed him that she planned to present the information regarding Erica Arrington, Jeff Germany, and William Bell to the Federal Task Force. Prior to that date, Sergeant Oladeinde had not complied with Captain Walker's order that the information must be verified before she made the information public. On the same

date, Deputy Chief Miller transferred Sergeant Oladeinde to a patrol unit. Chief Deutsch, as department head, signed the personnel transfer form.

Sergeant Oladeinde and Officer Fields filed this action on January 29, 1991. They alleged inter alia that they were harassed and punished for exercising their First Amendment rights in violation of federal and state law.

On February 1, 1991, Officer Fields was transferred "due to the current conflict with supervision within [her] unit...." In March 1991, Sergeant Oladeinde applied for a promotion to police lieutenant. It was the first time she was certified as eligible for a promotion to lieutenant. The BPD utilized the following procedure in promoting an officer. The chief of police would request from the Personnel Board a list of persons certified as eligible for the promotion. The chief would then call a meeting of deputy chiefs and captains to decide which candidates on the list should be promoted. The names of the candidates selected for promotion would be forwarded to the mayor for final approval. The mayor testified that he had always accepted the recommendations from Chief Deutsch regarding promotions. At trial, an officer who participated in the meeting testified that when Sergeant Oladeinde's name was mentioned Chief Deutsch said, "no, scratch her" and there was no further discussion of her candidacy. Sergeant Oladeinde was not promoted. On June 3, 1991, the plaintiffs filed an amended complaint which alleged facts regarding Officer Fields's transfer and Sergeant Oladeinde's failed promotion request.

II

PROCEDURAL BACKGROUND

Our resolution of the issues presented in this appeal has been hampered by the failure of the plaintiffs to specify which, if any, of the numerous written reports and verbal statements made by Sergeant Oladeinde and Officer Fields were protected by the First Amendment. This confusion and lack of specificity in the plaintiffs' theory of their case continued up to the time of oral argument. The district court's failure to perform its duty to determine which of plaintiffs' speech, if any, was protected, and to instruct the jury accordingly, unnecessarily complicated our task.

The defendants named in the initial complaint filed a motion to dismiss it, or in the alternative, to certify the following questions for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b): (1) whether the district court erred in denying the defendants of certain discovery requests? (2) whether the district court erred in ruling that "under the Task Force arrangement in effect between the United States and defendant City of Birmingham, plaintiffs had the right to give paramount loyalty to the United States rather than to the

defendant City and its superior police officials"? and (3) whether the district court erred in denying the defendants access to *in camera* materials and the names of confidential informants?

On April 5, 1991, the district court denied the motion to dismiss and granted the alternative motion for a certification to this court of the issues raised by the defendants. This court denied the petition for permission to appeal pursuant to § 1292(b). In explaining the basis for its order, this court noted that "the complaint presented to us with the petition—is a typical 'shotgun' pleading, in that in *one* count the plaintiffs have presented multiple claims for relief, supporting them with a rambling set of factual allegations that may or may not be relevant to each claim." *Oladeinde v. City of Birmingham,* No. 91-2063 (11th Cir. May 8, 1991) (citation omitted). Citing *Pelletier v. Zweifel,* 921 F.2d 1465 (11th Cir.1991), this court commented that where a plaintiff fails to comply with the requirement of Rule 8 of the Federal Rules of Civil Procedure to provide a short, clear, and concise statement of the claim, "then the burden shifts to the trial judge; acting *sua sponte,* the judge should require a repleader." *Oladeinde,* No. 91-2063 (11th Cir. May 8, 1991).

On June 3, 1991, the plaintiffs filed an amended complaint seeking damages and equitable relief for the deprivation of their rights to free speech, equal protection, and freedom of association. On June 12, 1991, the defendants filed motions for a dismissal based on (1) the plaintiffs' failure to conform to Rule 8 of the Federal Rules of Civil Procedure, (2) the plaintiffs' failure to state a claim for which relief might be granted, (3) the argument that the substance of the alleged activity was privileged from discovery, (4) the argument that the individual defendants were entitled to qualified immunity, and (5) the argument that the district court should not exercise pendent jurisdiction. The district court denied the motions. It concluded that the plaintiffs' complaint conformed to procedural rules. It did not explain the bases for the denial of the defense of qualified immunity. The individual defendants filed an interlocutory appeal.

This court began its analysis of the issues raised by the individual defendants by stating: "Many factors complicate our review of defendants' three claims, but no factor plays as dominant a complicating role as the long and wordy nature of plaintiffs' amended complaint." *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1484 (11th Cir.1992). This court also commented that "[w]e are perplexed and frustrated by the fact that, despite clear guidance from this court, 'the complaint presented to us ... [continues to be] a typical "shotgun" pleading.' " *Id.* Nevertheless, this court concluded that it would review the defendants' contentions and would not remand for future repleading "in light of the fact the case is presented to us for the third time (although the case has yet to advance much beyond the initial pleading stage) and in the interest of judicial

economy and efficiency." *Id.*

This court rejected the defendants' contention that the plaintiffs had violated the requirement that a pleading contain a short and plain statement of the claim notwithstanding "serious doubt that the complaint complies with Rule 8." *Id.* This court held that the plaintiffs had failed to plead sufficient facts to support their claims of a denial of due process, equal protection and freedom of association. *See id.* at 1485. This court concluded, however, that the plaintiffs had pleaded sufficient facts, when taken as true, to state a First Amendment claim against Chief Deutsch, Captain Walker, and Captain Webb, for which relief might be granted. *See id.* at 1486. The court held that the plaintiffs had failed to state a § 1983 claim against the mayor, Richard Arrington. *See id.* at 1486-87.

This court next addressed the question whether Chief Deutsch, Captain Walker, and Captain Webb were entitled to qualified immunity. This court affirmed the district court's order denying qualified immunity for the remaining individual defendants. This court explained its ruling as follows:

> [A]t this stage in the proceedings, the qualified immunity defense of Deutsch, Walker and Webb fails because the limited record before us does not support defendants' contention that, in light of prevailing legal standards, their interest in efficiently operating the police department arguably outweighed plaintiffs' free-speech rights on a matter of public concern. We stress, however, that defendants retain the right to assert the qualified-immunity defense at the next stage of the proceedings (and, for that matter, throughout the proceedings) as more facts are developed.

*Id.* at 1487.

On July 1, 1993, the individual defendants filed a motion for summary judgment, again asserting the defense of qualified immunity. In denying the motion, the district court relied on this court's conclusion that the limited record at the motion to dismiss stage in the proceedings did not support the individual defendants' contention that their interests in efficiently operating the police department outweighed the plaintiffs' First Amendment rights. The district court stated that, since the 1992 opinion of the 11th Circuit, the "defendants have offered no significant new evidence ... to justify their qualified immunity defense."

The individual defendants filed an interlocutory appeal from the denial of their motion for summary judgment on qualified immunity. On June 14, 1996, this court affirmed the district court's order in an unpublished disposition without setting forth its rationale, pursuant to Eleventh Circuit Rule 36-1.[3] *Oladeinde*

---

[3]Rule 36-1 states:

> When the court determines that any of the following circumstances exist:

(a)     the judgment of the district court is based on findings of fact that are not clearly erroneous;

*v. City of Birmingham,* No. 95-6352, 89 F.3d 855 (11th Cir. June 14, 1996).

The case proceeded to trial on June 22, 1998, on the plaintiffs' First Amendment claims against the City, Chief Deutsch, Captain Walker, and Captain Webb. The plaintiffs testified as summarized above. At the close of the plaintiffs' case in chief, the individual defendants moved for judgment as a matter of law, pursuant to Rule 50(a)(1)(2) of the Federal Rules of Civil Procedure based on the defense of qualified immunity. The district court did not rule on the motion until after the jury returned its verdict.

The district court did not instruct the jury regarding which instances of plaintiffs' speech were protected. Instead, the court instructed the jury as follows:

> Where the speech activity that each plaintiff engaged in was protected and where it was not protected, where it was guaranteed by the First Amendment and where it was not, I'm not going to try to go through everything they said and did in every context to tell you this was protected; this was not protected; this was. It's going to be for you to determine based on whether it was a matter of public concern, not just internal private matters ... I am saying that in this case, at least to some degree, the speech they engaged in, or the activities that could be described expression, were protected....

Following the court's charge to the jury, the defendants objected to this instruction on the ground that the court had improperly required the jury to decide which speech, if any, was protected. The court declined to reinstruct the jury.

The court requested that the jury respond to special interrogatories. The court inquired whether the plaintiffs had proved by a preponderance of the evidence that each of the individual defendants "did something or failed to do something with the intent to adversely affect Sergeant Oladeinde [or Officer Fields] for the purpose of suppressing [their] exercise of constitutionally protected speech or for the purpose of retaliating against [them] in response to any constitutionally protected expression or expressions by [them]?" The jury was not asked to specify which of the plaintiffs' statements were constitutionally protected. The jury responded affirmatively regarding Chief Deutsch and Captain Walker. The jury found that Captain Webb did not suppress constitutionally protected speech nor did he retaliate against Sergeant Oladeinde and Officer

---

(b)    the evidence in support of a jury verdict is sufficient;

(c)    the order of an administrative agency is supported by substantial evidence on the record as a whole;

(d)    a summary judgment, directed verdict, or judgment on the pleadings is supported by the record;

(e)    the judgment has been entered without an error of law;

> and an opinion would have no precedential value, the judgment or order may be affirmed or enforced without opinion. 11th Cir. R. 36-1.

Fields for exercising their freedom of expression.

The jury was also asked to respond to the following question:

[D]id Oladeinde [or Fields] prove by a preponderance of the evidence that defendant City had some policy or policies that encouraged or allowed some violation or violations of 42 U.S.C. § 1983 by Deutsch, and/or by Webb, and/or by Walker, and or by Deputy Chief Miller?

The jury answered "No" to this interrogatory. The jury was questioned regarding whether the individual defendants were policy makers for the City in committing "any violation of 42 U.S.C. § 1983." The jury gave a negative response to this question.

The jury found that Chief Deutsch was liable to Sergeant Oladeinde in the amount of $36,379.20. The jury found the that Chief Deutsch was not liable to Officer Fields. The jury found that Captain Walker was liable to Sergeant Oladeinde in the amount of $150,000 and liable to Officer Fields in the amount of $125,000. The jury rendered a verdict in favor of the City and Captain Webb as to the claims filed by each of the plaintiffs. The jury also found that Sergeant Oladeinde owed the City "$2,056 plus 6% interest to date" on its counterclaim.

On July 8, 1998, the district court denied the individual defendants' initial motions for judgment as a matter of law. On the same date, Sergeant Oladeinde filed a motion for judgment as a matter of law seeking equitable relief. The district court treated Sergeant Oladeinde's motion as a motion for additional relief pursuant to Rule 59 of the Federal Rules of Civil Procedure.

Chief Deutsch and Captain Walker filed renewed motions for judgment as a matter of law, or for a new trial, on July 14, 1998. They again asserted the defense of qualified immunity. They also argued that the district court erred by failing to instruct the jury as to which speech was protected.

In their opposition to the renewed motion for a judgment as a matter of law, the plaintiffs maintained that the jury's verdicts were based on the plaintiffs' request to take information regarding tampering of the records to the district attorney, the conduct of Captain Walker on January 4, 1991, and the transfer and failure to promote Sergeant Oladeinde thereafter, as the suppression of protected speech of public concern, and the defendants' retaliatory acts.[4] In arguing that the admission of the testimony of witnesses from the United

---

[4]The plaintiffs opposition reads as follows:

The distinction drawn in *Morgan v. Ford,* 6 F.3d 750 (11th Cir.1993), and *Morris v. Crow,* [142 F.3d 1379,] No. 97-2784, Slip. op. (11th Cir. June 9, 1998) (per curiam) (two decisions which post-date the law of this case), between speech for private advantage on one hand (i.e., "upon matters of personal interest,") *Morris, ante,* and matters of public concern raised in ways which show that private advantage was not the

States Department of Justice was harmless, the plaintiffs stated that their testimony "revealed only or chiefly the DOJ's witnesses' knowledge of events through 1990. *The liable conduct of Walker and Deutsch, as reviewed above, took place after that time.*" (emphasis added). In footnote 8 of their opposition, the plaintiffs stated: "This point refers only to jury findings on Walker and Deutsch's conduct in January, 1991, and afterward which is the period of time for the specific events reviewed above." The plaintiffs also asserted that knowledge of what took place at the meeting could be imputed to Chief Deutsch, and that their transfers and Sergeant Oladeinde's failed promotion request stemmed from their request for permission to report Chief Deutsch's involvement in tampering with the records of the arrest of the mayor's daughter.

The district court denied the renewed motions for judgment as a matter of law. The court explained that "the big ticket item" supporting the jury's finding that Captain Walker violated the plaintiffs' constitutional rights "was the derringer incident," and his conduct in testifying that Sergeant Oladeinde could not be believed under oath in the Ricky Germany trial and the transfer of Sergeant Oladeinde.[5] The court

---

  main aspect of the speech, applies with full force in the plaintiffs' favor. The verdicts against Deutsch and in Walker are consistent with the distinction and clearly supported by it.

  At the meeting in which Walker threatened and intimidated them, the plaintiffs spoke of evidence of official wrongdoing, namely Deutsch's role in the so-called "jail records case." The plaintiffs testified that Walker ranted against them throughout the meeting and continued to pose a derringer and bullets after they asked him (unsuccessfully) for permission to take the evidence to outside authority (the county D.A.). Walker denied the plaintiffs' accounts, describing the gunplay as an "ice-breaker." The jurors believed the plaintiffs instead. (They may have also considered rebuttal evidence which powerfully impeached Walker's credibility.)

  The plaintiffs notified their superiors of Walker's possession and use of the derringer, an unauthorized firearm they reported (speech also on official wrongdoing). Walker responded by officially complaining against plaintiff Oladeinde, a step which led, the circumstances indicate, to her transfer from narcotics duty. (footnote omitted.) Deutsch authorized the transfer (the evidence proves), a fact from which the jurors could infer Deutsch's knowledge of the instant events. (The inference could have been drawn, and properly so, separate from or together with other evidence.)

  Even before Walker's complaint, an emissary of the City of Birmingham (City) and Mayor Arrington tracked the plaintiffs down to question them about the information they communicated to Walker during the meeting. (The emissary was attorney Whatley, whom the Mayor conceded had been retained.) Again, jurors could infer Deutsch's knowledge of the events. Thereafter, in short order (a matter of months), Deutsch denied Oladeinde's promotion to lieutenant. The evidence of that act showed it to be retaliatory, or so the jury found.

[5]Although the district court included Captain Walker's testimony as one of the relevant acts of retaliation, he testified in the Ricky Germany trial on July 31, 1990. This was over five months before the plaintiffs' meeting with Captain Walker, at which time, they requested permission to report information regarding the records tampering case to the district attorney. His testimony, therefore, could not have

communicated that "there was gracious plenty of evidence to demonstrate that Captain Walker consciously intended to quiet Sergeant Oladeinde and Officer Fields and that he undertook to accomplish that purpose in ways causing plaintiffs physic [sic] damage, by frightening and embarrassing them."

The court further concluded that "[i]t is an entirely permissible inference that Chief Deutsch knew of plaintiffs' visit to Captain Walker that occasioned the display of the derringer." The court did not set forth the facts in evidence that it believed supported this inference. The court also observed that "[i]t was well within the realm of reason for this jury to have found a causal connection between Deutsch's decision to deny Oladeinde a promotion and Oladeinde's attempt to speak out on matters of passing public concern."

On July 29, 1998, the court granted Sergeant Oladeinde's motion for injunctive relief against the City, and ordered the City to promote her to the position of lieutenant. The City, Chief Deutsch, and Captain Walker filed timely notices of appeal from the final judgment entered against them. Sergeant Oladeinde filed a cross-appeal challenging the validity of the judgment in favor of the City on its counterclaim for $2,056.

We have jurisdiction over the appeals from the final judgments entered in this matter pursuant to 28 U.S.C. § 1291. We will first address the appeal filed by Chief Deutsch and Captain Walker. We will next consider the City's appeal, and conclude our review by deciding the merits of Sergeant Oladeinde's cross-appeal.

III

APPLICABILITY OF THE DEFENSE OF QUALIFIED IMMUNITY ON THIS RECORD

A.    *Law of the Case*

Chief Deutsch and Captain Walker contend that the judgments against them must be reversed because the trial record demonstrates that they are entitled to qualified immunity. The plaintiffs maintain that Chief Deutsch and Captain Walker are foreclosed from prevailing on this defense because this court has previously decided the issue against them. They assert that this court's prior decisions regarding the applicability of the defense of qualified immunity constitute the law of the case. Thus, before addressing the merits of the individual defendants' contention that they are entitled to qualified immunity, we must determine whether we are precluded from reviewing this issue based on the law of the case doctrine.

"Under the law of the case doctrine, both the district court and the appellate court are generally bound by a prior appellate decision of the same case." *Venn v. St. Paul Fire & Marine Ins. Co.,* 99 F.3d 1058,

_____

been in retaliation for that speech.

1063 (11th Cir.1996). The law of the case doctrine, however, bars consideration of "only those legal issues that were actually, or by necessary implication, decided in the former proceeding...." *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1549 n. 3 (11th Cir.1990). Furthermore, "[t]he doctrine 'directs a court's discretion, it does not limit the tribunal's power.'" *Murphy v. Federal Deposit Ins. Corp.,* 208 F.3d 959, 966 (11th Cir.2000) (quoting *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)). Therefore, we may reconsider an issue already decided by this court in the same case if, since the prior decision, new and substantially different evidence is produced, or there has been a change in controlling authority. *See Venn,* 99 F.3d at 1063. We may also reconsider an issue if the prior decision was clearly erroneous and would result in a manifest injustice. *See id.*

This court first addressed the issue of qualified immunity in this case on an appeal from the denial of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure based on an alleged failure to plead a violation of federal law and the denial of the qualified immunity defense. *See Oladeinde,* 963 F.2d at 1485. As this court noted, that decision was based upon the facts as alleged in the complaint. *See id.* The complaint did not contain all of the facts related to the circumstances of the plaintiffs' meeting with Captain Walker, facts which, as discussed below, bear upon a determination of whether the defendants violated a clearly established right. Thus, as this court recognized when it published its first opinion on this issue, the defendants were not precluded from asserting the qualified immunity defense throughout the proceedings as the facts developed. *See id.* at 1487. Indeed, the Supreme Court has recognized that "resolution of the immunity question may 'require more than one judiciously timed appeal,' because the legally relevant factors ... will be different on summary judgment than on an earlier motion to dismiss." *Behrens v. Pelletier,* 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). Here, because the complaint did not contain all of the relevant facts that were introduced both at summary judgment and at trial, this court's first opinion affirming the denial of qualified immunity did not establish the law of the case.

The plaintiffs assert that, even if this court's published opinion did not establish the law of the case, Chief Deutsch and Captain Walker had an opportunity to develop the facts and present evidence in support of the defense of qualified immunity when they filed their motion for summary judgment. The plaintiffs note that, despite the volumes of evidence submitted by the defendants with their summary judgment motion, this court nevertheless affirmed the district court's denial of qualified immunity. The plaintiffs argue, therefore, that this court's second unpublished order affirming the denial of the motion for a summary judgment

established the law of the case. We conclude that it did not for several reasons.

First, in ruling on the motion for summary judgment, the district court did not consider Sergeant Oladeinde's claim that she was denied a promotion because of her speech.[6] Thus, whether the defendants were entitled to qualified immunity for the decision not to promote Sergeant Oladeinde to lieutenant was not before this court in its order affirming the district court's order denying summary judgment. This court's June 14, 1996, order is not the law of the case as to that issue.

Furthermore, new and substantially different evidence was introduced at trial regarding the incident in Captain Walker's office when he placed a derringer on his desk. During cross examination, Sergeant Oladeinde admitted that Captain Walker placed the gun on his desk before anyone had said anything at the meeting. As discussed further below, these facts are relevant to the question whether Captain Walker is entitled to qualified immunity for his conduct.

Because this court did not set forth its reasons for affirming the district court's denial of summary judgment, it is unclear whether this court affirmed the district court's ruling because issues of fact as to the police department's interests and the defendants' motives in transferring the plaintiffs should be decided by the jury, *see Jennings v. BIC Corp.,* 181 F.3d 1250, 1254 (11th Cir.1999), or whether, in viewing the facts in the light most favorable to the non-moving party, summary judgment was inappropriate, *see Katz v. Comprehensive Plan of Group Ins.,* 197 F.3d 1084, 1088 (11th Cir.1999). Where a previous panel has given no explanation for its decision, a subsequent appellate court panel is "not bound by any 'law of the case' unless a determination by us concerning the propriety of [the district court's order] is necessarily inconsistent with every possible correct basis for the earlier rulings of this court." *Key v. Wise,* 629 F.2d 1049, 1054-55 (5th Cir.1980). One correct basis for this court's earlier ruling is that there remained genuine issues of material fact in dispute requiring a trial as to the police department's interests and the individual defendants' motives in transferring the plaintiffs. Such a ruling would present no binding conclusion of law as to the defendants' qualified immunity, but would simply allow the case to proceed to the jury. A conclusion now,

---

[6]The district court listed the plaintiffs' contentions at the start of its memorandum opinion accompanying its order denying the defendants' summary judgment motion. Although it listed several alleged retaliatory actions since the filing of the law suit, it did not include the denial of the promotion. Later in its memorandum opinion, it made reference to the failed promotion request, but noted that "[i]t is beyond this court's ability to infer not only that Oladeinde was 'certified' for promotion but also that this certification necessarily entitled her to a promotion. Accordingly, the failure to promote Oladeinde may not be received as evidence relevant to her First Amendment claim, depending upon what the condition of the evidence is at the time."

after the facts have been developed at trial, that the defendants are entitled to qualified immunity would not be inconsistent with this possibly correct basis for the earlier ruling of this court. We hold, therefore, that we are not bound by the law of the case doctrine in deciding whether the individual defendants were entitled to qualified immunity regarding their decision to transfer the plaintiffs.

B.    *Applicability of Qualified Immunity for First Amendment Claims*

Chief Deutsch and Captain Walker contend that they are entitled to qualified immunity because they did not violate clearly established law. They argue that the information regarding two police officers and Chief Deutsch that the plaintiffs desired to present to the district attorney was the fruit of the plaintiffs' work as police officers and was not an appropriate matter of public concern. They assert that the duty to disclose the details and source of information concerning non-criminal activity by fellow police officers to a superior officer for a determination whether it should be investigated by IAD, in order to maintain a loyal and cohesive law enforcement agency, outweighed the plaintiffs' freedom of expression. They also maintain that reasonable officials in their position would have believed that there were legitimate reasons, unrelated to the plaintiffs' speech, for transferring the plaintiffs and failing to promote Sergeant Oladeinde.

The plaintiffs contend that Chief Deutsch and Captain Walker are not entitled to qualified immunity because it was clearly established on January 4, 1991, that their speech was protected, and because the jury expressly determined in a special verdict that the defendants were motivated by a retaliatory motive and did not act against the plaintiffs for appropriate reasons.

This court reviews a district court's ruling on a motion for judgment as a matter of law de novo, viewing the evidence in the light most favorable to the non-moving party. *See Gupta v. Florida Board of Regents,* 212 F.3d 571, 582 (11th Cir.2000). In determining whether a government official is entitled to qualified immunity following a jury verdict, we view the evidence in the light most favorable to the party that prevailed at trial. *See Priester v. City of Riviera Beach,* 208 F.3d 919, 925 n. 3 (11th Cir.2000) (citing *Iacobucci v. Boulter,* 193 F.3d 14, 23 (1st Cir.1999)). In so doing, we give deference to the jury's "discernible resolution of disputed factual issues." *Iacobucci,* 193 F.3d at 23 (citing *Frazell v. Flanigan,* 102 F.3d 877, 886 (7th Cir.1996)).

"Government officials performing discretionary functions are entitled to qualified immunity 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Hartley v. Parnell,* 193 F.3d 1263, 1268 (11th Cir.1999) (quoting *Harlow v.*

*Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In determining whether the defense of qualified immunity is applicable, we must first consider whether the plaintiffs established facts demonstrating a deprivation of an actual constitutional or statutory right. *See id.* (citing *Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). If so, we must then determine whether that right was clearly established at the time of the alleged violation. *See id.* A right is clearly established if "the contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *McElligott v. Foley,* 182 F.3d 1248, 1260 (11th Cir.1999) (quoting *United States v. Lanier,* 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997))

We first examine whether the plaintiffs presented evidence of a deprivation of an actual First Amendment right. A public employee has a limited right to free speech. *See Maggio v. Sipple,* 211 F.3d 1346, 1351 (11th Cir.2000). A public employee's speech is constitutionally protected if the speech may be "fairly characterized as constituting speech on a matter of public concern," and the employee's interest in commenting on the matter outweighs the government's interest "in promoting the efficiency of the public services it performs through its employees." *Id.* (quoting *Connick v. Myers,* 461 U.S. 138, 142, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)); *see also Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (establishing the balancing test). In determining whether a government employee's speech is related to a matter of public concern, we must consider "the content, form, and context" of the speech. *See id.* at 1352 (quoting *Connick,* 461 U.S. at 147-48, 103 S.Ct. 1684). Even if the speech is protected, the Government may prevail if it can prove that "it would have reached the same decision ... even in the absence of protected conduct." *Grigley v. City of Atlanta,* 136 F.3d 752, 754 (11th Cir.1998) (quoting *Bryson v. City of Waycross,* 888 F.2d 1562, 1566 (11th Cir.1989)) (internal quotations omitted).

1.      *Speech Related to a Matter of Public Concern*

As discussed above, the plaintiffs did not clearly specify the allegedly protected speech until oral argument before this court. In response to a question from the court, plaintiffs stated that the violation of plaintiffs' right to speak out about a matter of public concern at issue in this appeal occurred when "plaintiffs approached Walker to present information regarding the jail records tampering."[7] Accordingly, our analysis of the alleged protected speech will be limited to the request by Sergeant Oladeinde and Officer Fields for

---

[7]In their responsive brief, the plaintiffs argued as follows: "The plaintiffs proved the speech which grounds Deutsch's and Walker's liability. The verdicts rest on the tampering information against Deutsch, which the defense referred to as the second area of speech."

permission to make a report to the district attorney, Captain Walker's refusal, and the alleged retaliatory acts that followed.[8]

The record shows that Sergeant Oladeinde and Officer Fields requested Captain Walker's permission to report to the district attorney that Officer Fields had seen two fellow officers looking at jail records concerning the arrest of Mayor Arrington's daughter. Officer Fields refused Captain Walker's request that she disclose what she had observed. Sergeant Oladeinde also refused to reveal what Officer Fields had told her about the conduct of the two BPD officers regarding the jail records. After Officer Fields informed Captain Walker that she had not observed the commission of a crime by the two BPD police officers, Captain Walker denied their request to go to the district attorney, and directed the plaintiffs to make a report to the IAD.

While Officer Fields failed to disclose any facts concerning her observations, including the names of the officers, she did inform Captain Walker that it related to the investigation of Chief Deutsch's alleged tampering of arrest records. *See Stanley v. City of Dalton,* 219 F.3d 1280 (11th Cir.2000) ("Although the theoretical form of [the plaintiff's] statements affects the weight we give this speech in the Pickering balance, it does not defeat the public concern nature of [his] speech."). Clearly, it is a matter of public concern that a police chief and members of his department would tamper with public records to cover up the criminal conduct of a family member of the highest elected official of a city. Such speech relates to a "matter of political, social, or other concern to the community." *See Maggio,* 211 F.3d at 1352 (quoting *Connick,* 461 U.S. at 146, 103 S.Ct. 1684) (describing speech that constitutes a matter of public concern). An attempt to disclose alleged corruption within a police department is speech related to a matter of public concern because "a core concern of the first amendment is the protection of the 'whistle-blower' attempting to expose government corruption." *Bryson,* 888 F.2d at 1566; *see also Cooper v. Smith,* 89 F.3d 761, 765 (11th Cir.1996) ("There can be no doubt that corruption in a police department is an issue of public concern."); *Fikes v. City of Daphne,* 79 F.3d 1079, 1084 (11th Cir.1996) (same); *Stanley,* 219 F.3d 1280 (same).

Chief Deutsch and Captain Walker argue that the speech did not involve a matter of public concern

---

[8]The plaintiffs include Captain Walker's brandishing of the derringer as one of these retaliatory acts. The record shows, however, that Captain Walker placed the derringer on his desk before the plaintiffs disclosed that the purpose of the meeting was to request permission to report Officer Fields's observations to the district attorney concerning the conduct of the two officers in looking at the records involved in the tampering case against Chief Deutsch. This act, therefore, could not have been in retaliation against the plaintiffs' exercise of their First Amendment rights.

because Officer Fields made her observations in the course of her work as a police officer. They also note that Officer Fields reported her observations to her supervisor, Captain Walker, and not to the public. Chief Deutsch and Captain Walker assert that this case is therefore controlled by *Morris v. Crow,* 142 F.3d 1379 (11th Cir.1998). In *Morris,* this court held that the plaintiff's speech did not involve a matter of public concern because his speech "was generated pursuant to his official and customary duties as an accident investigator with the sheriff's office." *Id.* at 1382. This court based its conclusion that the speech was not related to a matter of public concern, however, on the fact that there was nothing in the record demonstrating that the plaintiff's purpose "was to bring to light any wrongdoing or to do any more than accurately report an accident in the course of his employment." *Id.*

Unlike the plaintiff in *Morris,* Officer Fields informed Captain Walker that she observed two BPD police officers looking at records involved in the investigation of Chief Deutsch's alleged tampering with prison records. Sergeant. Oladeinde's and Officer Fields's purpose was to bring possible wrongdoing to light. Simply because the plaintiffs sought permission from their supervisor before reporting the information to the district attorney does not remove their speech from the public's interest. Nor does the fact that the plaintiffs did not report Officer Fields's observations to the district attorney change the fact that the speech suppressed by Captain Walker was related to a matter of public concern. *See Gonzalez v. Lee County Hous. Auth.,* 161 F.3d 1290, 1296 (11th Cir.1998) (rejecting argument that a plaintiff's speech was not related to a matter of public concern simply because the speech was made solely in the confines of the workplace) (citing *Connick,* 461 U.S. at 149, 103 S.Ct. 1684); *Morgan v. Ford,* 6 F.3d 750, 754 n. 5 (11th Cir.1993) (recognizing that, although it is a relevant factor, "a court cannot determine that an utterance is not a matter of public concern solely because the employee does not air the concerns to the public"); *see also Dill v. City of Edmond,* 155 F.3d 1193, 1202 (10th Cir.1998) ("[T]he fact that Plaintiff chose a private forum within the police department and the district attorney's office, rather than a public forum, does not remove the speech from First Amendment protection."). We are persuaded that the plaintiffs' speech in this case was related to a matter of public concern.

2.    *Pickering Balancing Test*

In order to establish that their speech was protected, a plaintiff must do more than assert that the speech relates to a matter of public concern. A plaintiff must also demonstrate that his or her interest in speaking out on the matter is not outweighed by the government's interest "in promoting the efficiency of the

public services it performs through its employees." *Maggio,* 211 F.3d at 1351 (quoting *Connick,* 461 U.S. at 142, 103 S.Ct. 1684); *see also Pickering,* 391 U.S. at 568, 88 S.Ct. 1731 (establishing the balancing test). Several factors inform our analysis of the government's interest in the efficient provision of public services: "(1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time and place of the speech, and (3) the context within which the speech was made." *Bryson,* 888 F.2d at 1567.

In considering these factors in a § 1983 action brought by police officers against their public employer, we are required to consider the fact that members of a law enforcement agency are part of a quasi-military organization. *See Hansen v. Soldenwagner,* 19 F.3d 573, 577 (11th Cir.1994) ("[T]he Pickering balance is also affected ... by the special concerns of quasi-military organizations such as police departments."). In a law enforcement agency, there is a heightened need for order, loyalty, morale and harmony, which affords a police department more latitude in responding to the speech of its officers than other government employers. *See Rogers v. Miller,* 57 F.3d 986, 991 (11th Cir.1995) (citing *Hansen,* 19 F.3d at 577); *see also O'Donnell v. Barry,* 148 F.3d 1126, 1135 (D.C.Cir.1998) ("[B]ecause of the special degree of trust and discipline required in a police force there may be a stronger governmental interest in regulating the speech of police officers than in regulating the speech of other governmental employees."); *Dill,* 155 F.3d at 1203 (recognizing that the government's interest is "particularly acute in the context of law enforcement, where there is a heightened interest ... in maintaining discipline and harmony among employees") (quoting *Moore v. City of Wynnewood,* 57 F.3d 924, 934 (10th Cir.1995)); *Campbell v. Towse,* 99 F.3d 820, 829-30 (7th Cir.1996) ("It surely cannot be doubted that individuals who work in the highest echelons of the command of a police department must be assured of the loyalty of their immediate subordinates, as these subordinates are entrusted with carrying out their orders, at times under the most trying conditions.").

Here, Officer Fields refused to disclose any facts to Captain Walker other than that she observed two police officers looking at the arrest records of the mayor's daughter and that they were not committing a crime. Sergeant Oladeinde also refused Captain Walker's request that she provide further detail regarding the information they wanted to report. Given the fact that the plaintiffs provided no details regarding the alleged misconduct, and that they refused to do so when asked by their commanding officer, the plaintiffs' speech was disruptive to the efficient operation of the BPD.

Because they refused to name the BPD police officers observed by Officer Fields, Captain Walker

was unable to determine whether the officers observed by Officer Fields were conducting an authorized investigation of Chief Deutsch's alleged misconduct, or if they were engaged in a non-criminal violation of departmental regulations calling for administrative discipline. Without any verifiable facts, the BPD had an interest in keeping Officer Fields's allegations against the BPD police officers within that agency until the IAD could investigate their conduct, especially because Officer Fields stated that they were *not* committing any crime.

In *Busby v. City of Orlando,* 931 F.2d 764 (11th Cir.1991), this court recognized that "[i]n quasi-military organizations such as law enforcement agencies, comments concerning co-workers' performance of their duties and superior officers' integrity can directly interfere with the confidentiality, esprit de corps and efficient operation of the police department." *Id.* at 774 (quoting *Egger v. Phillips,* 710 F.2d 292, 327 (7th Cir.1983)) (internal quotations omitted); *see also Stanley,* 219 F.3d 1280 (recognizing that a police department has a strong interest in preventing its officers from making unfounded accusations against a superior officer because it "could be considered disruptive and potentially undermining to the mutual respect and confidence needed for fellow officers in a police department"). In *Busby,* this court concluded that, in light of these interests of a law enforcement agency, the defendants were entitled to qualified immunity because the defendants "did not bar [the plaintiff] from voicing her complaints; they merely sought to delay her access to a public forum until after the [ ] internal affairs division could investigate her complaints." *Id.* Like the defendant in *Busby,* Captain Walker did not order the plaintiffs not to disclose Officer Fields's observations. Rather, he directed the plaintiffs to report it to IAD.

Furthermore, the plaintiffs' speech interfered with the efficient operation of the BPD because they refused to disclose the nature of the information to Captain Walker after he requested them to do so. Such a refusal of their commanding officer's order demonstrates that the plaintiffs' speech interfered with the BPD's strong interest in maintaining discipline and loyalty of its officers. *See Rogers,* 57 F.3d at 991 (holding that, given the special need for order and loyalty, a supervising officer in the sheriff's department was entitled to qualified immunity for transferring his subordinate where the supervisor expressed concern that he could no longer supervise the subordinate because of his speech activities); *see also Campbell,* 99 F.3d at 829-30 ("It surely cannot be doubted that individuals who work in the highest echelons of the command of a police department must be assured of the loyalty of their immediate subordinates, as these subordinates are entrusted with carrying out their orders, at times under the most trying conditions."); *Cochran v. City of Los Angeles,*

222 F.3d 1195 (9th Cir.2000) (concluding that a city has a significant interest in responding to a police officer's speech where the speech "impair[ed] discipline by superiors.") (citation omitted). Indeed, the record shows that the tension between Captain Walker and the plaintiffs was a primary reason for transferring them out of the Narcotics Unit. Thus, the plaintiffs' interest in taking the information to the district attorney was outweighed by the BPD's interests in its efficient operation given the disruption that might be caused if the plaintiffs reported Officer Fields's observations to the district attorney without a prior investigation by IAD. Furthermore, a report by Officer Fields to the district attorney of her undisclosed and unverified observations, prior to an investigation by the IAD, would have created a risk of harming the reputation and careers of two BPD officers who may not have committed any misconduct. Permitting such an injustice undoubtedly would have harmed the morale of the members of the BPD.

We conclude that the plaintiffs' speech was not protected because their interest in speaking out was outweighed by the BPD's interests in maintaining order, loyalty, morale, and harmony. Because the plaintiffs have not demonstrated a violation of a right protected by the First Amendment, we need not proceed to an analysis of whether the law was clearly established. Likewise, we need not consider whether their transfers, and the failure to promote Sergeant Oladeinde were retaliatory. We conclude that Captain Walker and Chief Deutsch were entitled to the protection of the defense of qualified immunity as a matter of law. Thus, the district court erred in submitting this question to the jury, *see Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ("The entitlement is an *immunity from suit* rather than a mere defense to liability ...."), and in denying their renewed motions for a judgment as a matter of law.

IV

THE CITY'S APPEAL

In response to the district court's special interrogatories, the jury found that Chief Deutsch and Captain Walker were not policy makers for the City, and that the City did not have any policy that encouraged Chief Deutsch and Captain Walker to violate § 1983. Based on these conclusions, the jury found that the City was not liable to Sergeant Oladeinde or Officer Fields for money damages.

A city or local government agency "may not be held liable for constitutional deprivations on the theory of respondeat superior. Rather, they may be held liable only if such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." *Denno v. School Bd. of*

*Volusia County,* 218 F.3d 1267, 1276 (11th Cir.2000) (citing *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). An official represents government policy if he or she has final policy making authority. *See id.* Furthermore, "[f]inal policy making authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review." *Id.* (quoting *Scala v. City of Winter Park,* 116 F.3d 1396, 1401 (11th Cir.1997)). The opportunity for meaningful review will suffice to divest an official of any policy making authority. *See id.* at 1276.

In response to a post trial motion filed by Sergeant Oladeinde, the district court ordered the City to promote her to the rank of lieutenant based on the jury's implied finding that Chief Deutsch retaliated against her because of her exercise of her right to speak regarding a matter of public concern. We have concluded that Sergeant Oladeinde failed to prove that her speech was protected. Accordingly, Chief Deutsch's refusal to promote her was not in retaliation for the exercise of her First Amendment rights. Thus, even if we assume that the court correctly determined that the City was liable for Chief Deutsch's conduct because he was a policy maker, since the record does not show a violation of § 1983 by Chief Deutsch, the court erred in granting injunctive relief to Sergeant Oladeinde.

V

JUDGMENT FOR DAMAGES AGAINST OLADEINDE

In her cross-appeal, Sergeant Oladeinde requests that we reverse the judgment against her in the amount of $2,056. She contends that because the counter-claim against her was founded on a theory of quasi-contract, or breach of implied contract, the district court erred in instructing the jury concerning the crimes of conversion and embezzlement. Sergeant Oladeinde further argues that the City tried to trick the jury into believing that she had in fact been dishonest about the missing money in her drug account by arguing that the polygraph evidence demonstrated that Sergeant Oladeinde had been dishonest.

We review de novo the question whether the court's instructions to the jury misstated the law or misled the jury to the prejudice of the objecting party.[9] *See Palmer v. Board of Regents,* 208 F.3d 969, 973 (11th Cir.2000). In determining whether there was reversible error, we consider the jury instructions as a

_____

[9]The City asserts that Sergeant Oladeinde waived her right to challenge the jury instructions on appeal because she failed to object to them. The record reveals that Sergeant Oladeinde filed a response to the defendants' proposed jury instructions in which she objected to the use of the instructions for embezzlement and conversion because they would be inflammatory, prejudicial, and inconsistent with the counterclaim. Thus, even though she did not object at the time the district court read the instructions to the jury, the trial court was adequately informed as to her contentions. *See Industrial Dev. Bd. v. Fuqua Indus., Inc.,* 523 F.2d 1226, 1238 (5th Cir.1975).

whole. *See Torcise v. Community Bank of Homestead,* 116 F.3d 860, 868 (11th Cir.1997). "We will not overturn a jury verdict because of an erroneous jury instruction unless there is also a showing of prejudice." *Mosher v. Speedstar Division of AMCA Int'l, Inc.,* 979 F.2d 823, 826 (11th Cir.1992).

The plaintiffs have failed to demonstrate that the court's instruction on embezzlement was prejudicial. In addition to instructing the jury on theories of embezzlement and conversion, the district court instructed the jury on a theory of money had and received. The district court admonished the jury as follows:

> The City seeks to recover from the plaintiff money which it contends plaintiff Oladeinde received but which rightfully belongs to the City. When a person receives money belonging to another, the law creates an implied promise to repay it. The measure for damages for money had and received is the amount of money belonging to the defendant ... which the defendant counterclaimant proves by a preponderance of the evidence that it was received by Oladeinde and which she was bound to return together with interest....

This instruction captures the essence of the quasi-contract instruction that Sergeant Oladeinde proposed to the court.[10] *See Schafer v. Time Inc.,* 142 F.3d 1361, 1368 (11th Cir.1998) ("[T]he trial judge is entitled to wide discretion over the style and wording employed as long as the instructions accurately reflect the law."). The interrogatory to the jury simply asked: "Did the City prove by a preponderance of the evidence that Oladeinde owes some amount of money to the City?" The jury answered affirmatively.

The jury could not have found Sergeant Oladeinde liable to the City unless, at a minimum, it believed that Sergeant Oladeinde was owed money to the City under a quasi-contract theory. The record supports such a finding because Sergeant Oladeinde admitted that she had received the money from the City, that she was responsible for it, and that she could not account for $2,056 of it. The instructions did not allow the jury to find Sergeant Oladeinde liable under a theory that imposed a lesser burden of proof on the City than that she requested.

Sergeant Oladeinde did not object to City's argument to the jury regarding the polygraph test. We review, therefore, only for plain error. *See Oxford Furniture Cos. v. Drexel Heritage Furnishings, Inc.,* 984

---

[10]Sergeant Oladeinde requested that the instruction state, in part:

> When because of the acts of the parties, or others, someone comes into possession of money under such circumstances that in equity and good conscience that person ought not to be allowed to retain it and which in justice and fairness belongs to another, the law implies the obligation to pay or deliver it to the one entitled thereto. If you are reasonably satisfied from the evidence that a quasi-contract exists, and that Oladeinde received a benefit from the City when she received the money (if you find that she received it); and that she accepted and retained the benefit under such circumstances that it would be unjust and unfair for her to retain it without paying the value thereof, then the City would be entitled to recover the reasonable value of the benefit received.

F.2d 1118, 1128 (11th Cir.1993). In a civil trial, a finding of plain error is seldom justified in reviewing counsel's arguments. *See id.* The district court did not commit plain error because the jury could have found Sergeant Oladeinde liable to the City for $2,056 without also concluding that Sergeant Oladeinde was dishonest in failing to return the money to the City.

## VI

## CONCLUSION

We REVERSE the judgment against Captain Walker and Chief Deutsch because Sergeant Oladeinde and Officer Fields failed to present evidence that demonstrates that they were engaged in speech protected by the First Amendment. We REMAND with directions that the district court vacate its order denying the renewed motions for a judgment as a matter of law and to enter an order granting such motions. We REVERSE the judgment against the City requiring it to promote Sergeant Oladeinde because Chief Deutsch did not retaliate against her for the exercise of protected speech. We AFFIRM the judgment on the counterclaim in favor of the City.

REVERSED in part, REMANDED in part, and AFFIRMED in part.