NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 22-2865

———————

FRANK DIMARCO,

Appellant,

v.

BOROUGH OF SAINT CLAIR; RICHARD TOMKO; WILLIAM DEMPSEY

———————————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-20-cv-01335)
District Judge: Honorable Jennifer P. Wilson

————————

Submitted Under Third Circuit LAR 34.1(a)
on September 29, 2023

Before: KRAUSE, AMBRO, and SMITH, Circuit Judges

(Opinion Filed October 3, 2023)

**AMBRO**, <u>Circuit Judge</u>

Appellant Frank DiMarco appeals the District Court's grant of summary judgment disposing of his claim for First Amendment retaliation. We affirm because we agree with the District Court that the St. Clair Police Department's interest in maintaining order and discipline outweighed any speech interest that DiMarco might have had.

**I.**

DiMarco is a police officer with the Borough of St. Clair Police Department ("St. Clair Police") in Pennsylvania. He also works part time as the Chief of Police for the Police Department in Schuylkill Township ("Schuylkill Police"). In summer 2018, a local restaurant owner, Michael Hoti, approached DiMarco about hosting a fundraising event for the Schuylkill Police, during which people would pay to watch Hoti get tased. DiMarco admits having a broader conversation with Hoti about a fundraiser but otherwise claims that he was not involved.

The restaurant posted on its Facebook account that "[a]nyone that [d]onates will be invited to watch Frank D[i]Marco [t]ase Mike." App. 1170. Ultimately DiMarco did not attend the event, but a local newspaper still credited him for coming up with the idea.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

*See id.* at 1172 ("The idea for . . . the event was borne out of a talk between Hoti and Police Chief Frank DiMarco.").

After the event, Chief of St. Clair Police William Dempsey and Mayor Richard Tomko read about it in the local paper. They were concerned that their officer endorsed the use of a taser on a civilian unnecessarily and thought that this "reflected poorly" on the St. Clair Police. *Id.* at 1002. They also suspected that DiMarco's role in the event violated the Saint Clair Police Department General Order that prohibits "[c]onduct [u]nbecoming an [o]fficer"—defined, *inter alia*, as acts that "ha[ve] the potential for endangering . . . another person" and "[u]nsafe acts that endanger . . . another." *Id.* at 1177. After investigating, Dempsey and Tomko met with DiMarco to notify him that they were contemplating disciplinary action. The parties negotiated a five-day suspension, which DiMarco accepted.

DiMarco later realized that, because of the suspension, he was ineligible for a promotion for another three years. He sued Dempsey and Tomko in the Middle District of Pennsylvania for retaliation under the First Amendment. The Magistrate Judge issued a report and recommendation ("R&R") that the Court grant summary judgment for the defendants because they (1) did not violate DiMarco's First Amendment rights and (2) are entitled to qualified immunity. DiMarco objected, but the District Court adopted the R&R. DiMarco then timely appealed.

## II.

Public employers may regulate, in some cases, employees' speech without violating the First Amendment. *Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 466 (3d

3

Cir. 2015). The government "has a freer hand in regulating the speech of its employees than it has in regulating the speech of the public at large, but that hand is not uncontrolled." *Fenico v. City of Philadelphia*, 70 F.4th 151, 166 (3d Cir. 2023) (citation omitted). To determine which restrictions are allowed, we apply the balancing test laid out in *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968). Under this test, we weigh (1) the interest of the employee, as a citizen, in commenting on matters of public concern against (2) the interest of the public employer in promoting workplace efficiency and avoiding disruption. *Id.*

DiMarco argues the District Court did not conduct a *Pickering* balancing test at all, DiMarco Br. at 10, and also that the results of the balancing test the Court did use were wrong, *id.* at 13. Neither argument warrants vacating the order of the District Court, as it properly applied the *Pickering* test, *see* App. 21-28, 33-34, and determined there was no First Amendment violation.

Under the first part of the test, the Court concluded that DiMarco's perceived speech[1] (*i.e.*, his alleged participation in the taser fundraiser) was made as a private citizen on a matter of public concern. That said, "the manner, time, place, and entire context of the expression are relevant." *Swartzwelder v. McNeilly*, 297 F.3d 228, 235 (3d Cir. 2002) (citing *Connick v. Myers*, 461 U.S. 138, 152 (1983)). And here, the *manner* in which DiMarco was perceived to have raised funds—by endorsing the use of a taser on

---

[1] Perceived speech, even where the perception stems from a mistake of fact, suffices as the basis for a First Amendment retaliation claim. *Heffernan v. City of Paterson*, 578 U.S. 266, 273 (2016).

4

an innocent civilian—rather than the *content* of the fundraiser—supporting a police department—decreases his interest in the speech because he could have expressed the content through less dangerous and disruptive means.

Under the second part of the test, the Court decided the employer's interest in disciplining the speech outweighed the interests of DiMarco.  DiMarco violated a Saint Clair Police Department General Order, and law enforcement agencies have a strong "need for discipline."  *Kelley v. Johnson*, 425 U.S. 238, 246 (1976); *see also Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1293 (11th Cir. 2000) (explaining that law enforcement agencies have a "heightened need for order, loyalty, morale[,] and harmony").  The District Court concluded that police departments must be able to discipline their officers for speech that involves breaking department rules and, more importantly, endangering civilians.  We agree with the Court's analysis.

DiMarco asserts on appeal that the defendants "did not even argue or offer evidence that [his] perceived participation in the fundraiser actually disrupted or could have disrupted the efficient and effective operation of the St. Clair [P]olice [D]epartment."  DiMarco Br. at 14.  But the defendants did not have to prove actual disruption; a reasonable prediction of disruption is sufficient.  *See Waters v. Churchill*, 511 U.S. 661, 673 (1994).  In any case, there is ample evidence in the record that demonstrates the Department's concerns about potential disruption.  *See, e.g.*, App. 164 ("Defendant Tomko was concerned about discharging a [t]aser in a bar as that seemed unreasonable . . . [and] reflected poorly on the Saint Clair Borough Police Department.");  *id.* at 164-65 ("Defendant Dempsey also found the event concerning because 'it was

5

sadistic in order to obtain needed funds' as the event '[e]xposed someone to an electromagnetic device . . . .'"); *id.* at 166 ("[B]oth Defendant Tomko and Defendant Dempsey felt disciplinary action was warranted."); *id.* at 10-11. And disruption itself is just one "weight[] on the scales" alongside many other interests. *Zamboni v. Stamler*, 847 F.2d 73, 79 (3d Cir. 1988) (citation omitted). The Department's interests in disciplining officers who endanger civilians and promoting order and loyalty outweigh DiMarco's interest in tasing a civilian, even if we take possible disruption out of the equation.[2]

∗     ∗     ∗

We thus affirm the judgment of the District Court.

---

[2] Because the District Court properly determined that there was no First Amendment violation, we do not review its decision on qualified immunity.